6744

### STATE v. WALKER.

1. CHARGE.—Ordinarily no instruction should be given a jury except such as is based on some theory deducible from the evidence. But in this case, in absence of calling attention of the Court that defendant did not desire instructions on plea of self-defense, and of showing that he was probably prejudiced by such instructions, it is not reversible error to so instruct.

2. CONTINUANCE.—Requiring defendant to go to trial three days after copy of indictment is furnished his counsel, appointed by the Court, under the facts here, held not error.

3. ARGUMENTS—DISCRETION.—Whether recess for the night should be taken after attorney for defendant had concluded his argument, when solicitor could have concluded his the same evening, and permitting him to make his in the morning, is discretionary with trial Judge.

4. JURY.—Failure to admonish jury as to their conduct during recess is not error unless there be a showing that defendant was thereby prejudiced.

5. IBID.—JUROR.—Permitting a juror to sit on a case after admonition by the Court that any one having formed an opinion or prejudiced against defendant should stand aside, who said after he was summoned for the term the defendant in this case should be hanged, can not be considered here because the "Case," does not show the matter was in any way brought to the attention of the trial Judge.

6. CHARGE—GRAND JURY.—General instructions to grand jury can not constitute ground for reversing verdict of petit jury.

Before Gage, J., Dorchester, April, 1907.   Affirmed.

Indictment against J. M. Walker for murder of Joe Demicola.   From sentence on verdict of manslaughter. defendant appeals.

*Mr. R. Lon Weeks, for appellant, cites: Under facts here, cause should have been continued: 4* Ency. P. & P., 833, Par. 6. *Instruction on plea of self-defense should not have been given: 11* Ency., 248; 9 Tex., 536. *If misconduct of a juror is shown which may have prejudiced the appellant, new trial should be granted: 12* Ency. P. & P., 553. *Jury should not have been allowed to separate: 12* Ency., 566, 568, 578; 32 S. C., 392.

*Solicitor P. T. Hildebrand, contra, cites: As to competency of jurors: 24* Cyc., 302, *et seq.;* 65 S. C., 321; 36 S. C., 479. *Failure to admonish jury as to their conduct during recess will not work reversal where no injury results to defendant: 12* Ency. P. & P., 583. *Jury may separate before finally charged with a case: 12* Ency., 684.

February 13, 1908.   The opinion of the Court was delivered by

Mr. Justice Jones.   The appellant, J. M. Walker, indicted for the murder of Joe Demicola in Dorchester County, was convicted of manslaughter and sentenced to fifteen years in the penitentiary.   Walker was a department boss or manager of the Dorchester Lumber Company, operating at Badham, in said county, and Demicola, a young Italian, was one of the employees.   Demicola, claiming to be in need of rest, failed to appear for some emergency work on Sunday morning in response to the request of Walker. He went to the shop Sunday afternoon, and he was informed by Walker that he was dismissed for not obeying orders.   This angered Demicola and he wanted to fight, but Walker declined to have any row and ordered him to leave the shop.   Demicola left the shop, stating that he would go

back to work. Early the next morning, Monday, January 27, 1907, about forty-five minutes before the homicide, Walker armed himself with a pistol, stating to a witness, "If that boy comes around me and starts any of his talk, I will make the dust rise, for he likes to talk to me with his hands in his pocket, and I do not know what he might do." Demicola soon thereafter appeared in the shop and was standing at the forge. Walker coming in saw Demicola and asked him twice what he was doing there. Demicola did not answer, but remained standing with his hand in hip-pocket, according to defendant's version. Walker advanced and struck Demicola with his fist. Demicola reached down and seized a two-pound hand-hammer, but before he could straighten up, Walker had seized him around the waist from the rear and tried to get the hammer. While struggling in this position, Demicola struck back or around with the hammer in some way; the blow fell upon Walker's face or head, drawing blood. Walker called upon bystanders to take the hammer from Demicola, and one of them took hold of the hammer. Walker then pulled out his pistol with one hand, while holding Demicola with the other. After the pistol was drawn, Demicola dropped the hammer and went out of the shop, Walker following, with pistol drawn on him and cursing him. It was testified that Walker said: "We will go on up to the office and settle it." Demicola went off in the direction of the boarding-house, which was between the workshop and the manager's office. After going some distance, Demicola in front and Walker a few feet in the rear, with pistol in hand, Demicola stopped, turned around and threw up his hand as if threatening to strike and Walker kicked him and the pistol was fired; Demicola ran towards his boarding-house, and as he ran Walker fired four times at him; Demicola ran around the corner of the house, fell near the door-steps, and died there soon after from a bullet entering his back.

The defendant's plea was "not guilty," but in the evidence his main line of defense was "primary confusional insanity,"

arising from the blow on the head by the hammer during the
struggle in the shop.    After the shooting, Walker returned
to the shop, sent a message to Superintendent Badham to
come, and went back to work at the lathe.    When Superin-
tendent Badham came, Walker was standing in the door,
and when asked by the superintendent how it happened, he
told the occurrence substantially as related above, up to and
including the statement that, after Demicola dropped the
hammer, Walker told Demicola to come on up to the office
and he would put him where he wouldn't bother him.    He
further told the superintendent that he shot four times.
The superintendent testified that Walker then appeared very
much excited, but after the conversation went back to the
lathe.    On the way to jail that morning with witness Con-
nor, he said he did not mean to kill Demicola but wanted to
teach him a lesson.    He turned his pistol over to Connor,
stating that he knew it would be confiscated.    Later in the
day, the superintendent visited him in the jail and conversed
with him, but was not impressed that he was crazy.    Dr.
M. S. Connor visited Walker on the morning of the homi-
cide and testified that he was impressed that Walker was
"irrational," that he talked queerly and disconnectedly of the
crime and did not seem to realize that he had done anything
wrong.    When asked whether Walker in his condition could
have had any knowledge of good and evil, this witness said
he could hardly answer that question.    He, however, stated
finally that from Walker's general conduct he thought he
was insane.

Dr. J. B. Johnston, who dressed the wound of Walker's
head on the morning of the homicide, described it as a con-
tused wound made by a severe blow from some heavy,
blunt instrument; that the blow was probably sufficient to
produce "primary confusional insanity," which he described
to be a condition of the mind that renders the person uncon-
scious of what he is doing for the time being, and that a
person suffering from it will generally go on doing
unconsciously what is on his mind at the time he receives the

shock. This witness was of the opinion that Walker was suffering from this form of insanity during his attendance on him.

The witness, Doughty, saw Walker in the shop shortly after the shooting while washing blood from his hands, and asked him what he wanted to shoot Demicola for, and stated that Walker said that he had to do it, that he had arrested Demicola after he hit him, that just before Demicola got to his boarding-house he started to run and he (Walker) shot at him three times to stop him and he refused to stop and he then shot him. This witness further testified that Walker seemed composed and appeared to think he was an officer and had the right to arrest Demicola. Walker had previously served as a policeman.

Whether the defendant was insane at the time of the fatal shot was fairly submitted to the jury under instructions charging all the requests of defendant's counsel on that subject.

The Court also instructed the jury fully as to the law of self-defense, and appellant assigns that it was error to charge on this subject, when no such issue was made and there was no testimony to which such a charge was applicable and that the charge was therefore misleading and hurtful.

The rule on this subject is thus stated in *Burns* v. *Goddord*, 72 S. C., 361, 51 S. E., 915: "As a general proposition it is true that no instructions should be given to a jury which are not based upon some theory deducible from the evidence, but it is also true that to justify a reversal of the judgment of the Circuit Court, it must appear that appellant was probably prejudiced by the action of the Court. Whatever may be the view elesewhere, our cases support the view that an instruction upon an issue to which there is no evidence whatever, or of mistake in stating issues, is not reversible error unless the attention of the Court is called to the matter. *Vann* v. *Howle,* 44 S. C., 546, 22 S. E., 735; *Crosswell* v. *Association,* 51 S. C., 469, 29 S. E., 236: *State*

v. *Sill*, 68 S. C., 38." In this case the attention of the Court was not called to the fact that defendant desired no such issue presented to the jury, and in view of all the circumstances we fail to see how defendant could have been prejudiced.

On the call of the case, defendant having announced that he was unable to employ counsel, Judge Gage appointed Mr. R. Lon Weeks of the Dorchester bar to represent defendant. Three days after a copy of the indictment had been furnished defendant, the case was called for trial. The defendant's counsel moved a continuance for the term on the ground that he had not had sufficient time to thoroughly investigate the case and consult with his client. The motion was refused and defendant excepts. We see nothing in the record to exempt this case from the general rule often declared that continuances are within the discretion of the trial Judge and that his action thereon is not ordinarily ground for reversal.

It is alleged that Judge Gage erred in adjourning Court at the conclusion of the argument of defendant's counsel to the jury, when the Solicitor could have completed his argument before night or within a reasonable time. We do not find in the record any statement of the facts so as to give a basis for the exception. There is no rule of law requiring completion of argument in a case before the Court can take a recess. Such matters are, of course, within the discretion of the Judge charged with the conduct of the business of the court.

It is further contended that there was error in dispersing the jury before the conclusion of the trial without instruction and admonition as to their conduct until the reconvention of the Court. Here again the record fails to show any basis in fact for exception. In the absence of a showing to the contrary, we are bound to assume that the Court properly admonished the jury, if allowed to separate before the case was finally submitted to them, but a

failure to so admonish is not reversible error in the absence of some showing that the accused was injured thereby.

The appellant assigns error in the judgment because "P. A. Walters, a member of the trial jury, had expressed an opinion after having been drawn as a juror for the term of court at which the defendant was tried, to the effect that the said J. M. Walker was guilty of murder and should be hanged for the crime, and then persisted in being impaneled as a juror on the jury by which the defendant was tried, and after being admonished by the Court to stand aside if he had expressed an opinion as to the guilt or innocence of the defendant, or for any reason was prejudiced against him." It does not appear that this matter was brought to the attention of the trial Court in anyway, either before or after the verdict. The only reference to the subject is contained in the affidavit of counsel made after the trial to the effect that he had been informed by T. A. Patrick and P. B. Weeks that the juror P. A. Walters after being drawn as a juror expressed an opinion to the effect that said J. M. Walker was guilty of murder and should hang, and persisted in being impaneled as a juror after being admonished by the Court that if any juror had expressed an opinion as to the guilt or innocence of the said Walker or was prejudiced against him to stand aside. As the province of this Court in reviewing cases like this is merely to correct errors of law committed by the trial Court, and as the trial Court has not only made no ruling upon the particular matter but has had no opportunity to do so, the exception can not be entertained.

The last exception complains that the charge of the Court to the grand jury at the opening of the Court was hurtful to the defendant. In charging the grand jury the Court used some strong, timely and wholesome language in reference to the numerous homicides in Dorchester County, and the duty of the grand and petit jurors to bring law-breakers to justice. It does not appear that any of the petit jurors who tried this case were present

8—79

during these remarks, and if they were, the remarks were well within the province of the Judge to make to the grand jury. General instructions to a grand jury can not constitute ground for reversal of the verdict of a petit jury.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE POPE *concurs with some doubt.*