7822

## STATE v. GLENN.

1. CHARGE.—Mere statement of issues, a hypothetical statement of facts, or a statement of undisputed facts in the charge is not charging on the facts.

2. IBID.—REQUEST must be presented *before* argument to be entitled to the consideration of the Court. Those suggested during the course of the argument should be presented at the close.

3. IBID.—A REQUEST is charged if the proposition therein contained is covered by the general charge.

4. IBID.—GRAND JURY.—A charge to the grand jury in presence of the petit jury couched in general terms, to the effect that the Court could guess that the defense in the murder cases then before the Court would be self-defense, arising from the deceased being about to draw his pistol, when in fact he had no pistol, and illustrating the position by a story rendering such defense absurd, is not prejudicial to a defendant tried at that Court by a petit jury hearing such charge, whose defense was self-defense based on the theory that the deceased was about to draw his pistol, when in fact he was found to have none.

Before GARY, J., Lexington, June, 1910. Affirmed.

Indictment against W. B. Glenn for the murder of Clinton Rhoden. Defendant appeals.

*Messrs. E. F. Strother, Efird & Dreher* and *W. H. Sharpe,* for appellant. *Messrs. Efird & Dreher* cite: *Stating facts in interrogative form is error:* 49 S. C. 496; 50 S. C. 168; 79 S. C. 197; 47 S. C. 489. *Charge to grand jury in presence of petit jury prejudicial to defendant:* 28 L. R. A. 367.

*Solicitor Geo. Bell Timmerman* and *Messrs. E. L. Asbill* and *Graham & Sturkie,* contra. *Solicitor Timmerman* and *Mr. Asbill* cite: *Statement of contention of parties is not a charge on the facts:* 62 S. C. 546; 63 S. C. 372. *Nor is stating an admitted fact:* 66 S. C. 23; 65 S. C. 169; 68 S.

C. 37, 392. *Nor of one introduced by appellant:* 60 S. C. 421 *Nor a hypothetical statement of facts:* 68 S. C. 304; 70 S. C. 75; 79 S. C. 187; 80 S. C. 531; 76 S. C. 91. *Charge must be construed as a whole:* 47 S. C. 25, 67; 58 S. C. 335. *Charge to the grand jury not error:* 79 S. C. 132, 113.

March 16, 1911. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK: In charging the jury, the Judge said: "The State contends that the defendant shot the deceased down when there was no danger to his life, or of receiving serious bodily injury, but at a time when the deceased was fleeing from the conflict and was in the act of begging favor, or begging mercy at the hands of the defendant." The first exception complains that this was a charge on the facts. It was not. It was merely a statement of the contention of the State, and can no more be said to be a charge on the facts than the previous statement that defendant's contention was that he should be acquitted, because he shot the deceased in self-defense. A mere statement of the issues is not a charge on the facts. *Bryce* v. *Cayce,* 62 S. C. 546, 40 S. E. 948; *Davis* v. *Ry.,* 63 S. C. 372, 41 S. E. 468.

The second exception complains of the following charge, upon the same ground: "But if there was no danger of losing his life, or of receiving serious bodily harm, and he shot out of a spirit of revenge, and when there was no danger, real or apparent, and he pursued a man who was retreating, and followed up his adversary with a deadly weapon, and intended to take his life, you could not say that was self-defense." This was only a hypothetical statement of the facts, which, as we have frequently held, is not a charge on the facts.

The third exception alleges error in the following part of the charge, on the same ground: "Now, in this case,

you will ask yourselves the question, was it necessary to shoot the first time? Was it necessary to shoot the second time? Was it necessary to shoot the third time? Was it necessary to shoot the fourth or fifth time? If you find there were shots fired, was it necessary to shoot at all?" There was no dispute in the evidence that defendant shot four or five times. He said himself that he shot five times. We have frequently held that the statement of undisputed facts is not a charge on the facts.

We have so frequently held that a mere statement of the issues, or a hypothetical statement of the facts, or a statement of admitted or undisputed facts is not a charge on the facts that the principle should be accepted as settled.

The fourth exception alleges error in refusing to charge a request that was handed up after the commencement of the argument. Rule 11 of the Circuit Court requires that, before the argument commences, counsel shall read and submit to the Court, in writing, their requests to charge,—and that such additional requests as may be suggested by the course of the argument may be submitted at the close thereof. The record shows that after the commencement of the argument, defendant's counsel handed up seven written requests, which the Court received and disposed of in the charge, and later on, and before the argument closed, they handed up another, which was refused, the Judge noting thereon that it was handed up subsequent to the others. There would have been no error, if the Judge had refused to entertain any of the requests, because they were not presented at the time required by the rule, which was intended to give the trial Judge the opportunity of considering requests before the commencement of the argument, to which he must necessarily pay attention. He must be allowed some opportunity to formulate his charge so as to present the law to the jury in a logical and connected way; and this would be seriously interfered with, if not entirely defeated, if counsel were permitted

to be handing up their requests during the argument, and perhaps after the Judge had formulated his charge in his mind. Such a practice tends to confusion and error. Of course, if the request is suggested by the course of the argument, it may and should be presented, but not until the close of the argument. Moreover, the proposition contained in the request was fully covered by the general charge, and therefore defendant was not prejudiced by the failure of counsel to submit it at the proper time.

On the first day of the term, the Judge charged the grand jury (the petit jurors being in the court room), in part, as follows: "The loss of human life in this country is fearful. I was reading the other day an article published in a reputable periodical, in which it was stated that fifty thousand people had been killed in this country during the past year, more than enough to make up the standing army of the United States. And out of this number only two per cent. had been convicted in Southern States. This condition of affairs can only be remedied by the juries of the country. I read a few days ago a statement from some writer who had visited several of the criminal courts of the country for the purpose of writing an article on what he had observed in regard to the practice in such courts. Among other things, he stated that his observation had led him to conclude that when any one juror was taken three times in succession by the defense, he was a fit subject to sell a gold brick to. The usual defense in these cases is self-defense. Now, I see several murder cases on your docket. I know nothing of them, but I can guess what the defense will be. It will be that the deceased put his hand to his hip pocket to shoot me and I had to shoot him in self-defense, and it turns out that the deceased had no pistol. I can illustrate it by a story I saw in print a few days since. A fellow out west, who made a business of robbing graves and furnishing the bodies to a medical college for the young

men to practice dissection on, had robbed a grave and was
carrying the subject to the college, and as he passed by a
barroom, he saw quite a crowd in there drinking.  He
could not stand the temptation, and, standing the stiff by
the door, he went in and joined in the fun.  After awhile a
general row and a general shooting took place.  During the
fray, everybody got out except the bartender.  After the
smoke cleared away, a 'cop,' strange to say, appeared upon
the scene, and saw the stiff lying in the middle of the floor,
where it had been thrown in the scuffle.  He went up to the
bartender and said to him, 'Why did you shoot this man?'
The bartender said, 'Why, he was about to draw his pistol
to shoot me, and I had to shoot him in self-defense.' "

The defendant's first request was as follows: "The charge
which was given in your hearing this week to the grand
jury was couched in general terms, and, as are all charges to
a grand jury, it was intended to apply to the general condi-
tions of society, and to the general duties of the grand jury
in dealing primarily with all criminal matters.  No charge
made to a grand jury is ever intended for, or appropriate to,
a petit jury in the trial of an individual case.  Each case
submitted to a petit jury must be tried by that jury alone,
on the evidence adduced in the case, and on the instructions
given by the Court, and it is the duty of the jury to see to it
that they are not influenced by outside impressions or pre-
conceived notions in reference to the particular case in hand
or to the general state of society."

The error assigned by the last two exceptions is that the
charge to the grand jury tends to bias and prejudice the
petit jurors, who heard it, against any plea of self-defense,
and because it was indirectly a charge on the facts of cases
likely to be tried by them; and that, having so charged the
grand jury, the Judge should have charged the defendant's
first request to remove, as far as possible, the bias and prej-
udice so created.  If there was no error in the charge to the

grand jury of which the defendant can complain, it follows, of course, that there was no error in refusing defendant's first request. As it turned out that what is commonly called the "hip-pocket defense" was set up by the defendant in this case, it was unfortunate that his Honor used that defense by way of illustration in his remarks to the grand jury. But that was merely an accidental coincidence. The jurors knew, in fact, his Honor told them, that he knew nothing of the cases to be tried. Therefore, the remarks could not have been supposed by the jurors to have been intended as especially applicable to the defendant's case, or any other; but, being general in their nature, they must have been understood as intended merely to impress upon the jurors that one who takes the life of his fellow-man should not be allowed to escape the penalty of the law upon any false, flimsy or meretricious defense. Jurors are presumed to be men of common sense and intelligence. As such, they must know that the "hip-pocket defense" has been so overworked that it has come to be a by-word,—just as has the defense of "irresistible impulse" or "brain-storm;" but it cannot be supposed that they would conclude from that that the defense is without merit in every case. It certainly could not be argued that, merely because a man had heard lectures or read articles in the public prints, ridiculing the "hip-pocket defense," he would be disqualified as a juror in such a case. It is the duty of jurors to take the law from the Court in the particular case on trial. It must be presumed that they do so. In this case, the Court clearly and explicitly instructed the jury that the defendant had the right to shoot in self-defense, if the necessity to do so was either real or only apparent, if he was without fault in bringing on the difficulty, and explained the difference between real and apparent necessity by several apt illustrations. The charge in this case was a clear, forceful, correct and impartial declaration of the law, and we think that the

supposition of prejudice from the charge to the grand jury is more imaginary than real.

Affirmed.