17847

STATE, Respondent, v. Israel SHARPE, Appellant

(122 S. E. (2d) 622)

*Messrs. Dowling, Dowling & Sanders,* of Beaufort, *for Appellant,*

*Randolph Murdaugh, Esq., Solicitor,* of Hampton, *for Respondent,*

November 14, 1961.

Moss, Justice.

Israel Sharpe, the appellant herein, was indicted at the 1959 June term of the Court of General Sessions for Beaufort County and charged with the crime of assault with intent to ravish. The indictment alleged that the crime took place on the night of May 5, 1959. The alleged victim was a young woman about twenty-one years of age. The presiding Judge appointed the firm of Dowling, Dowling and Sanders to represent the appellant because he was without employed counsel.

The appellant was tried and convicted at a special term of the Court of General Sessions held in Beaufort County, South Carolina, on June 30, 1959. Following the conviction, a motion for a new trial was made, heard and refused. Thereafter, the appellant was sentenced to death. Section 16-72 of the 1952 Code of Laws of South Carolina. Timely notice of intention to appeal to this Court was given.

After the jury was impaneled and sworn, counsel for the appellant made a motion that the trial Judge sequester all witnesses in the case. Such motion was granted. However, at the request of the Solicitor, the trial Judge permitted Sheriff J. E. McTeer to remain in the courtroom for the purpose of assisting the Solicitor. The appellant asserts that this was error.

In the recent case of *State v. Britt et al.*, 235 S. C. 395, 111 S. E. (2d) 669, this identical question was decided.

There we held that the granting or refusing of a motion for separation or sequestration of witnesses is within the sound discretion of the trial Judge. We also held that the trial Judge had authority to exempt particular witnesses from the operation of the rule or order for exclusion or sequestration. The question as to what witnesses may be exempted is largely a matter within the discretion of the court, and, even after the granting of the rule or order of sequestration, it is within the discretion of the trial court to permit a witness to remain in the courtroom for the purpose of assisting the prosecution and afterward to testify if the circumstances require it. *State v. Johnson,* 156 S. C. 63, 152 S. E. 825; 23 C. J. S., Criminal Law, §§ 1010 and 1011.

A full examination of the record in this case does not convince us that the trial Judge abused his discretion in permitting the sheriff to remain in the courtroom for the purpose of aiding and assisting the Solicitor.

The next question for our determination is whether it was error to admit into evidence the alleged confession of the appellant when such was taken while the appellant was in custody. The appellant also asserts that when his alleged confession was given that he was in "a coercive situation", being at the time in the Beaufort County Jail and under arrest for the crime with which he was charged.

The question of whether a confession is voluntary is one which is addressed to the court in the first instance. If there is an issue of fact as to the voluntariness of a confession, it should be admitted and the jury under proper instructions allowed to make the ultimate determination as to its voluntary character and also its truthfulness. A confession is not admissible unless it is voluntary. It necessarily follows that the burden rests upon the State to show that it was voluntary and there is no presumption of law that it was. The mere fact that a confession is made while the accused is in custody does not render it inadmissible. However, the conduct of the of-

ficer obtaining the confession will be rigidly scrutinized, and the fact that it is made while the accused is under arrest is a circumstance along with the other facts and circumstances to be taken into consideration by the jury in determining its voluntariness. *State v. Bullock,* 235 S. C. 356, 111 S. E. (2d) 657; 365 U. S. 292, 81 S. Ct. 686, 5 L. Ed. (2d) 570; and *State v. Outen,* 237 S. C. 514, 118 S. E. (2d) 175.

When the State offered evidence of the alleged oral confession of the appellant, a prompt objection was made to such admission on the ground that the State had failed to show that the statement was made freely and voluntarily. The trial Judge then excused the jury, and, in the absence thereof, heard the testimony of the officer concerning the circumstances of the confession. The witness, who was a deputy sheriff, testified that the oral confession of the appellant was freely and voluntarily given and that the appellant was not intimidated, abused or threatened in any manner. No evidence was offered in behalf of the appellant to the contrary. The procedure outlined in the case of *State v. Sanders,* 227 S. C. 287, 87 S. E. (2d) 826, had been followed, except the appellant had not availed himself, nor was he required to do so, of the opportunity through his own testimony, or that of other witnesses, to contradict the *prima facie* showing made by the State as to the voluntariness of his oral confession. The trial Judge admitted into evidence the alleged oral confession of the appellant. The Chief of Police of the City of Beaufort and the Sheriff of Beaufort County thereafter testified that the appellant made an oral confession to each of them and that in such he admitted committing an assault upon the prosecutrix. These two witnesses also testified as to the voluntariness of the oral confession made by the appellant to them. All of the evidence tends to show that the statements made by the appellant were freely and voluntarily given. We point out also that during the charge of the trial Judge to the jury he submitted the issue of whether the confession of the appellant was free and voluntary and, there-

fore, whether it should be considered or rejected by them. We find no error on the part of the trial Judge in admitting as evidence the oral confession of the appellant.

Prior to the call of this case for trial, the appellant, through his counsel, made a motion for an order to have him committed to the State Hospital for a period of thirty days for examination and observation as to his sanity, as is provided in and by Section 32-927 of the 1960 Cumulative Supplement to the 1952 Code of Laws of South Carolina. This motion was refused and the appellant asserts error.

The appellant, through his counsel, took the position before the trial Judge that since he was charged in a capital case with a sex deviation that he was entitled to be sent to the State Hospital for examination and observation for a period of thirty days. The trial Judge permitted the Solicitor to call as witnesses upon this issue the sheriff and a deputy sheriff of Beaufort County and the Chief of Police of the City of Beaufort, each of whom testified that there was no doubt in their mind that this man knew the difference between right and wrong, and that he was not of unsound mind. The sheriff expressed the opinion that the appellant "is a very intelligent boy". The testimony was properly received without objection. It was proper for lay witnesses to express an opinion as to whether the appellant was insane. *State v. Stockman,* 82 S. C. 388, 64 S. E. 595; *State v. King,* 222 S. C. 108, 71 S. E. (2d) 793 and *State v. Keller,* 224 S. C. 257, 78 S. E. (2d) 373. It appears that a Dr. Keyserling examined the appellant during the early morning hours after it is asserted the appellant committed the crime with which he was charged. A portion of his written statement was read into the record and was as follows: "The patient's manner is that of a well oriented individual. He did not appear to be intoxicated and seemed to be perfectly capable of understanding the purpose of his examination. He submitted willingly and apparently without resentment to this examination."

The appellant called as a witness Dr. Stanley F. Morse, a General Practitioner, who testified hypothetically, he having never examined the appellant. This physician positively testified that he was not in a position to say whether or not the appellant knew the difference between right and wrong.

Section 32-927 of the 1960 Cumulative Supplement to the 1952 Code of Laws, provides that "Any judge of the circuit court, * * * *may* order admitted to the State Hospital any person charged with the commission of any criminal offense who shall, upon the trial before him, be adjudged mentally ill or in whom there is a question as to the relation of mental illness to the alleged crime, whether this question is raised by the prosecution or defense or appears to the judge from any evidence brought before him or upon his own recognition. * * *" It is apparent from a reading of the foregoing statute that it was not the intention of the Legislature to make it compulsory that a person be committed to the State Hospital for observation merely because he is charged with a crime. This Court has held that under a statute similarly worded, Section 6239, Code of 1932, that the decision as to whether a defendant in a criminal case should be sent, on motion of his attorneys, to the State Hospital for examination and observation rests in the trial Court's discretion and will not be set aside unless there is a clear showing of abuse of the exercise of such discretion. *State v. Chandler,* 126 S. C. 149, 119 S. E. 774; *State v. Anderson et al.,* 181 S. C. 527, 188 S. E. 186, and *State v. Jones,* 201 S. C. 403, 23 S. E. (2d) 387.

We have carefully reviewed the evidence in the record and we reach the conclusion, based upon such, that the trial Judge did not abuse his discretion when he failed to commit the appellant to the State Hospital. There was, in our opinion, a failure on the part of the appellant to produce any evidence that would warrant the granting of such motion.

The record shows that the trial Judge provided in the sentence he imposed upon the appellant that he be committed

to the State Hospital for a period of thirty days for observation according to the statute hereinbefore quoted. We will assume that there has been compliance with this part of the sentence.

At the close of the testimony in behalf of the State, the appellant, through his counsel, announced that he would offer no testimony. The appellant made a motion for a directed verdict on the ground that the State had failed to prove the elements of the offense charged in the indictment.

It appears from the evidence that the prosecutrix is a young white married woman twenty-one years of age, the wife of a Marine Corps Sergeant, and at the time of the alleged offense committed by the appellant was the mother of a three-weeks-old baby. The prosecutrix testified that at approximately 11:30 o'clock P. M. on the night of May 5, 1959, she was cleaning house and fixing her baby's bottles. She testified that all doors to her house were locked and that when she had swept the trash to the back door of her house that she turned on a light in the back yard and unlocked the back door for the purpose of sweeping out the trash. While the door was open for this purpose a man with a white handkerchief over his face came in the door and grabbed the prosecutrix by the throat. She further testified that he fondled her, choked her and tore off her clothes, and attempted to rape her. It appears from the evidence that a struggle took place between the prosecutrix and her assailant. She testified that there was a bottle located on an ironing board in her house and that she struck her assailant on the side of the head with this bottle. She testified that during all of her struggle with the assailant that every time he would take his hand off her throat that she would scream. These screams were heard by neighbors and were reported to the officers. The testimony shows that an officer of the police department of the City of Beaufort, along with three military policemen, went to the home of the prosecutrix. When they arrived they

heard the prosecutrix screaming. One of the policemen looked in the window and saw a Negro man down on the floor over the woman who was screaming. Another officer ran to the back of the house and saw the appellant run out of the back door of the house. This witness testified that the appellant was wearing a pair of red-striped Bermuda shorts. The Chief of Police was advised of the type of clothing worn by the assailant of the prosecutrix and remembered that he had seen the appellant wearing similar clothes several days before this incident. When the appellant was arrested he had a knot on the right side of his head which would be the place where the prosecutrix had testified that she hit him with a bottle. He had an abrasion on his lip and scratches on his neck; also his knee was scratched and skinned. The officer testified that these marks on the body of the appellant were fresh and the blood was oozing from them. The prosecutrix identified the appellant as the one who had assaulted her. The appellant also confessed, as is hereinabove related, that he attempted to rape the prosecutrix.

The motion of the appellant for a directed verdict was refused by the trial Judge. The evidence in behalf of the State was ample to require the trial Judge to overrule the motion for a directed verdict and submit to the jury the question of the guilt of the appellant.

The appellant charges many additional errors on the part of the trial Judge during the course of the trial of this case, even though proper objection was not made during the course of said trial. The death penalty being here involved, it is our duty to examine the record for any error affecting the substantial rights of the appellant, even though not objected to at the trial or made a ground of appeal. *State v. Green,* 227 S. C. 1, 86 S. E. (2d) 598, and *State v. Outen,* 237 S. C. 514, 118 S. E. (2d) 175.

As is hereinabove stated, the appellant did not employ counsel and the trial Judge, pursuant to Section 17-507 of the 1952 Code of Laws, appointed the

firm of Dowling, Dowling and Sanders to represent him. The statute above referred to provides that where a person is indicted for a capital offense and desires counsel, the court before whom such person shall be tried, shall assign to such person such and so many counsel, "not exceeding two", as the Presiding Judge shall designate. The appellant alleges that the appointment of three attorneys to represent him was illegal and created the impression upon the jury that the trial Judge regarded the offense as unusually grave and serious. This same issue was before the Court in the case of *State v. Cooper,* 212 S. C. 61, 46 S. E. (2d) 545, 547. We adhere to what was there said in disposing of a similar assigned error. We quote the following:

"* * * It is contended that under this statute it is error for the presiding judge to appoint more than two attorneys to represent the accused in a capital case but we do not think this construction is warranted. There is no limitation in this State on the number of attorneys which a defendant may employ and we do not think the Legislature intended by this statute to impose any limitation on the power of the court to appoint counsel. The question is also raised that appellant was prejudiced by the appointment of three attorneys in that the impression was thereby created that the trial Judge regarded the offense as an unduly grave one which probably warranted the extreme penalty. It is true that the appointment of too many attorneys might under certain circumstances create an impression unfavorable to the accused and also result in too broad a division of responsibility. Certainly it would be unwise for the court to undertake to appoint the entire bar of a county to represent a defendant. In the instant case, however, we are satisfied that appellant was not prejudiced by the appointment of three attorneys to represent him. Under all the circumstances we think the discretion of the trial Judge was wisely exercised."

The prosecutrix testified that when the appellant came into her home his face was covered with a handkerchief and it came off during the struggle between

them. One of the officers testified that he found a handkerchief at the back of the house on which appeared fresh blood spots and showed signs of having been tied at the corners. There was testimony that there were fresh scratches on the appellant's face and neck. This handkerchief was offered in evidence. There was no objection to such introduction. The appellant now asserts that the introduction of this handkerchief was calculated to arouse the sympathies or prejudices of the jury and should have been excluded. It is true that this Court has held that blood stained clothing which is calculated to arouse the sympathies or prejudices of the jury should be excluded from the evidence unless the introduction thereof was necessary to establish some material fact in the case. *State v. Green,* 227 S. C. 1, 86 S. E. (2d) 598, and *State v. Edwards,* 194 S. C. 410, 10 S. E. (2d) 587. An examination of this exhibit shows that it is almost impossible to see the tiny specks of blood thereon. We cannot say that the handkerchief was so blood stained as to arouse the sympathies or prejudicies of the jury. The introduction of the handkerchief into evidence tends to corroborate the testimony of the prosecutrix that the appellant entered her home with his face covered by a handkerchief. This exhibit was also relevant to show that the appellant received scratches and bruises in his struggle with the prosecutrix. It was relevant to show material facts in the case.

The appellant takes the position that the jury to serve at the special term of court at which he was tried was not properly drawn in that only one day's notice of the drawing of such jury was given by the publication of such in a newspaper. Appellant asserts that this was violative of Section 38-63 of the 1952 Code of Laws of South Carolina, which provides that, "The jury commissioners shall give ten days' notice of the place, day and hour of each of such drawings by posting in a conspicuous place on the courthouse door or by advertisement in a county newspaper." It is unnecessary for us to decide this question for the reason that, for other

errors, the judgment of the lower Court in this case will be reversed and the case remanded for a new trial.

After the appellant had been arrested and placed in ██ ██ jail, his mother came to the jail and an officer explained to her why he was under arrest. The mother was then permitted to see the appellant in the presence of an officer and she said: "Israel, as many colored women as it is in this town why in the world did you go and get messed up with a white woman and you will just have to pay your penalty." The appellant made no reply to this statement. Upon the trial of the case, when this testimony was given by the officer, an objection was made to its admission only on the ground that the appellant was not present when the statement was made. The record shows otherwise. The objection was properly overruled. This Court has held that statements in the presence of the accused by a third person are admissible as evidence when such accused remains silent and does not deny such statements. *State v. Sudduth,* 74 S. C. 498, 54 S. E. 1013, and *State v. Green,* 121 S. C. 230, 114 S. E. 317. Under this rule, when appellant's mother made the foregoing statement to him and he remained silent and did not deny same, such statement was admissible.

It appears from the record that Lt. R. E. Ramsey, a ██ member of the City of Beaufort Police Force, was the first person to talk to the prosecutrix after the alleged assault upon her. She told this officer that a colored fellow had tried to rape her. This was objected to by the appellant on the ground that such was hearsay. The Court overruled the objection and the appellant assigns error. The testimony of the prosecutrix shows that the appellant had attempted to rape her. Her statement to the officer was admissible as evidence. In the case of *State v. Harrison,* 236 S. C. 246, 113 S. E. (2d) 783, 784, we said:

"It is next claimed that the Court erred in permitting the mother of the prosecutrix to relate the details of the complaint by her daughter when she arrived at the home of

Frances Butler, which was less than two hours after the alleged assault. It is well settled that the fact that the prosecutrix complained of a rape may be shown in corroboration of her testimony. *State v. Sudduth,* 52 S. C. 488, 30 S. E. 408; *State v. Dawson,* 88 S. C. 225, 70 S. E. 721; *State v. Black,* 204 S. C. 414, 29 S. E. (2d) 675. If the prosecutrix does not testify, such evidence is inadmissible. *State v. Wallace,* 122 S. C. 520, 115 S. E. 811. The particulars or details are not admissible but so much of the complaint as identifies 'the time and place with that of the one charged' may be shown. Wigmore on Evidence, 3rd Ed., Section 1136; *Lauderdale v. State,* 227 Miss. 113, 85 So. (2d) 822. The testimony in controversy did not go beyond the foregoing limitations and certainly was not prejudicial."

The next question for determination is whether the ██ ██ trial Judge committed error in allowing testimony of a previous conviction of the appellant when his character had not been put in issue. The testimony of Officer Michael shows that the appellant told him:

"He went around to this house on the Point to get revenge on the woman that testified against him in a previous case that caused him to have to serve eight months on the Chain Gang. He said that he went to the house, he went to the back of it and was there three or four minutes, that the lady inside the house was sweeping and when she got to the back door she opened the door and he ran in. * * *"

* * *

"He saw then that it was not the woman who had testified against him so I asked him well, Israel, why didn't you leave the house and he said at that time it didn't make no difference, he said I was going to rape anybody that would have been there."

The Chief of Police of the City of Beaufort, Lee R. Rentz, corroborated the testimony of Officer Michael that the foregoing statement was made by the appellant. It is implicit in the record that the woman who had testified against the

appellant had formerly lived in the same house occupied by the prosecutrix at the time of the alleged assault upon her.

The general rule is that evidence that the accused has committed another crime independent of and unconnected wih the one on trial is inadmissible. To this rule there are certain exceptions. However, the general rule should be strictly enforced in all cases where applicable because of the prejudicial effect and injustice of such evidence, and should not be departed from except under conditions which clearly justify such a departure. *State v. Bullock,* 235 S. C. 356, 111 S. E. (2d) 657, and *State v. Thompson,* 230 S. C. 473, 96 S. E. (2d) 471. The recognized exceptions are set forth not only in the two above cited cases, but also in the case of *State v. Lyle,* 125 S. C. 406, 118 S. E. 803, 807, as follows:

"Evidence of other crimes is competent to prove the specific crime charged when it tends to establish, (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial."

The evidence questioned here would clearly seem to be admissible under subdivisions (1), (2) and (5), as is above set forth, showing the motive and intent of the appellant, as well as to prove his identity as the perpetrator of the crime charged against him. This exception of the appellant is overruled.

The appellant asserts that the Court erred in refusing to set aside the verdict of the jury finding him guilty without recommendation to mercy because such verdict was the product of the atmosphere and surroundings in which the case was tried. He asserts that on the day previous to his trial that a white man (Fred G. Davis) had been convicted, without recommendation to mercy, of raping a Negro woman, and by reason of such trial preceding that of the

appellant, a general atmosphere of hostility was thereby created which was prejudicial to his rights and denied him a fair and impartial trial. The appellant further asserts that he was deprived of a fair and impartial trial by reason of the fact that the trial Judge permitted cameramen, photographers and newsreel men, in the presence of the jury, to take pictures during his trial.

The record in this case reveals that on Monday, June 29, 1959, Fred G. Davis, a white man, was tried on an indictment charging that he committed rape upon a Negro woman. He was convicted of such crime without recommendation to mercy and was sentenced to death by electrocution. An appeal from such conviction is pending in this Court and was argued on the same day as the appeal in the instant case. Reference is had to the opinion in the *Davis case,* which is being filed on the same day as the opinion in this case, as to the improper argument made by the Solicitor which referred to the fact that the instant case would be tried at the same term of court.

The case against the appellant was tried on the day following the trial of the *Davis case,* June 30, 1959. As is heretofore stated, the appellant, a Negro man eighteen years of age, was indicted and tried for an assault with intent to ravish. The victim of such assault was a young married white woman approximately twenty-one years of age.

The power of the law to take the life of human beings for a violation thereof is one which should be and is exercised with extreme caution. The frailties of human nature are so manifest and manifold until the law should and does place around the defendant, whose life would be taken for a violation of the law, every safeguard to enable such defendant to secure a fair and impartial trial. When it is made to appear that anything has occurred which may have improperly influenced the action of the jury, the accused should be granted a new trial, although he may appear to be ever so guilty, because it may be said that his guilt has

not been ascertained in the manner prescribed by law. This Court has taken the position that in all cases involving the life of the defendant, it is not bound down to a consideration of the exceptions raised, but if anything appear in the record which would warrant a reversal, this Court will consider that matter as if raised by the exceptions. What effect improper argument of a Solicitor may have, even though made in anohter case, yet in the presence of a jury panel from which a jury was later selected to try the appellant, is impossible to say. *State v. Britt et al.,* 235 S. C. 395, 111 S. E. (2d) 669. Every case should be tried in a calm and judicial atmosphere so that the arbiters of the fact may not be affected by any outside interference or extraneous influences. We do not know what effect the trial of the previous case and the argument of the Solicitor therein may have had upon the trial of the appellant. We, therefore, conclude that in order to remove all doubt as to whether the appellant received the fair and impartial trial guaranteed to him by the Constitutions of this State and of the United States that this Court should reverse the conviction of the appellant and remand the case to the lower Court for a new trial.

The next question for determination is whether the trial Judge committed error in permitting photographers and newsreel men to make pictures in the courtroom, in the presence of the jury, during the trial of the appellant. It is an admitted fact in the record that the trial Judge permitted pictures to be taken during the trial of this case and in the presence of the jury.

In the case of *State v. Weldon,* 91 S. C. 29, 74 S. E. 43, 45, 39 L. R. A., N. S., 667, we find this statement:

" * * * Trials must be public; but the right of the accused to a fair trial is superior to the right of the public to witness the trial. In all trials, not only the dignity and decorum which should characterize the administration of justice, but the preservation of the rights of the people and of the parties to the cause, require that the public should be kept away from the witnesses and the jury and the counsel,

to the end that the issue may be tried and decided without interference or extraneous influence. * * * "

In 1937 the American Bar Association adopted Canon 35 of its Canons of Judicial Ethics. It has been said that this Canon was adopted "after a series of raucous publicity circuses during criminal trials outraged the sense of decency of the judicial profession." Canon 35 provides as follows:

"Proceedings in court should be conducted with fitting dignity and decorum. The taking of photographs in the courtroom, during sessions of the court or recesses between sessions, and the broadcasting or televising of court proceedings are calculated to detract from the essential dignity of the proceedings, distract the witness in giving his testimony, degrade the court, and create misconceptions with respect thereto in the mind of the public and should not be permitted."

We also call attention to the fact that the Federal Rules of Criminal Procedure contain a specific prohibition against the taking of photographs in a courtroom during the progress of judicial proceedings. Rule 53, 18 U. S. C. A., page 598, provides:

"The taking of photographs in the courtroom during the progress of judicial proceedings or radio broadcasting of judicial proceedings from the courtroom shall not be permitted by the court."

In the case of *Tribune Review Pub. Co. v. Thomas,* D. C., 153 F. Supp. 486, 494, affirmed in 3 Cir., 254 F. (2d) 883, a State Court rule that barred the broadcasting or photographing of trials was sustained when challenged in a Federal Court. It was there stated:

"The very thought of members of the press and/or amateur photographers and others employing cameras, no matter how silent and concealed, to photograph different parties and witnesses to a court proceeding while the parties and the court are engrossed in the determination of matters of tremendous moment to the parties involved, is re-

pugnant to the high standard of judicial decorum to which our courts are accustomed, and, indeed, may prove an opening wedge to a gradual deterioration of the judicial process.

" * * * The greatest danger to freedom may well stem from those who seek the license and luxury of increased liberties at the expense of the processes which feed life blood to our free institutions."

In the case of *State of Ohio v. Clifford et al.,* 162 Ohio St. 370, 123 N. E. (2d) 8, 10, it appears that a rule was enforced preventing the taking of photographs in the courtroom. The Ohio Court, in affirming a conviction for contempt for the violation of such rule, said:

" * * * Such a rule is in force in all of the Federal courts of the United States is clearly stated in the Canons of Judicial Ethics of the American Bar Association, and is recognized as necessary courtroom decorum by many state and local Bar Associations and by a great many individual judges of state courts. It is therefore impossible for this court to hold that the trial court, in promulgating the rule against photographs, which rule has received such wide acceptance in courts of law as being necessary to the impartial administration of justice, abused its discretion.

"It is claimed also by defendants that the enforcement of such rule directly contravenes the constitutional right of freedom of the press. In considering this question, other constitutional guarantees, all of equal importance, must be taken into consideration. The Constitution of this State has vested its judicial power in the courts and charged the Judges of our court system with the obligation of administering justice without fear or favor, without respect to persons, and free from distractions or disturbances that are inimical to judicious conduct, looking only to the best in-interests of the litigants whose rights are the subject of a proceeding. The rules of courtroom conduct must be such as to remove it from the distractions and disturbances of the market place, and to maintain as nearly as possible an atmosphere conducive to profound and undisturbed delib-

eration. The right to trial in a courtroom, conducted and maintained in an atmosphere that bespeaks the profound and dignified responsibilities with which those who are conducting its proceedings—dealing with human rights as they must—are charged, is basic. A court in enforcing reasonable courtroom decorum is preserving the constitutional and unalienable right of a litigant to a fair trial, and in preserving such right, the court does not interfere with the freedom of the press. A fearless and untrammelled judiciary is a necessary bulwark in protecting liberty under law, and in preserving the rights of the people. There is no claim in this proceeding that all who wanted to attend this session of the court were not permitted to do so, or that the opportunity to report the proceeding was not afforded in keeping with courtroom decorum, such right being limited by requiring that the reporter act so that the proceeding of the court should not be disturbed."

In the case of *Ex parte Sturm et al.,* 152 Md. 114, 136 A. 312, 51 A. L. R. 356, the five appellants were adjudged to be in contempt of court for the violation of its orders in regard to the taking and publication of photographs at the trial of a murder case. The Maryland Court of Appeals, in affirming the conviction of the appellants for contempt, said that the rule was promulgated not merely to preserve the dignity and decorum of the court, but to protect the prisoner and other participants from an unnecessary and perhaps an objectionable degree of publicity. It was further held that the constitutional right of the accused to a public trial is a privilege intended for his benefit. It does not entitle the press or the public to take advantage of his involuntary exposure at the bar of justice to employ photographic means of picturing his plight in the toils of the law.

In the case of *Bisignano v. Municipal Court of Des Moines,* 237 Iowa 895, 23 N. W. (2d) 523, cert. den. 330 U. S. 818, 67 S. Ct. 674, 91 L. Ed. 1270, it was held that the federal rule forbidding the taking of photographs during the progress of judicial proceedings or radio broad-

casting of such proceedings in the courtroom should be followed by every other court whether federal or otherwise and in either criminal or civil proceedings, since to treat a trial as a means of entertainment is to deprive a court of the dignity which pertains to it.

We agree that Canon 35, above quoted, should be enforced in the trial of cases in the courts of this State. The Canon sets forth a standard which should govern the conduct of judicial proceedings. To allow a deviation therefrom would permit distractions or disturbances that are inimical to judicious conduct.

We are fully conscious that there has been criticism of Canon 35 of the Canons of Judicial Ethics. Members of the press and representatives of the radio and television industries, and some judges and lawyers, argue that the restriction of Canon 35 is a violation of the freedom of the press. Attention is directed to an article by William O. Douglas, Associate Justice of the Supreme Court of the United States, who answers the critics of Canon 35. This article is reported in Vol. 46, at page 840, of the American Bar Association Journal.

It is our conclusion that the trial Judge committed error in permitting photographs to be taken in connection with the trial of this case.

The judgment of the lower Court is reversed and this case remanded for a new trial.

TAYLOR, C. J., and OXNER, LEGGE and LEWIS, JJ., concur.