20032

The STATE, Respondent, v. John Wesley QUEEN and Terry Stewart MOORE, Appellants.

(216 S. E. (2d) 182)

*Messrs. W. D. Rhoad,* of Bamberg, and *Robert W. Warren,* of Allendale, *for Appellants,*

*Messrs. Daniel R. McLeod, Atty. Gen., C. Tolbert Goolsby, Dep. Atty. Gen., Joseph R. Barker, Asst. Atty. Gen.,* and *Wade S. Kolb, Jr., Staff Atty.,* of Columbia, and *C. LaVaun Fox, Sol.,* of Aiken, for *Respondent,*

June 11, 1975.

Moss, Chief Justice:

John Wesley Queen and Terry Stewart Moore, the appellants herein, have appealed from their convictions in the Court of General Sessions for Barnwell County, of the offense of distributing marijuana, a controlled substance, in violation of Section 32-1510.49 of the Code, as amended. The appellants were each sentenced to imprisonment for a term of five years. The appeal raises three questions.

The first question presented is whether the trial judge was in error in denying the motion for a continuance on the ground that one of the appellants was under the influence of a narcotic drug. At the beginning of the trial a motion for a continuance was made on

the ground that the appellant Moore was taking a strong narcotic drug for pain, and because thereof could not adequately participate in his defense or the defense of his co-defendant, John Queen.

This case was tried on May 28, 1974, and on the day prior to trial, counsel for the appellants submitted to the trial judge a slip from a physician indicating that the appellant Moore had been to see him regarding second and third degree burns to his left hand and was to return to the office on that day for follow-up treatment. There was nothing in this slip to indicate that the appellant Moore had been administered a narcotic drug. The trial judge then communicated with this physician and was informed by him that Moore was to come back to his office for another dressing of his burn any time on May 27, 1974, and that he did not know of any reason why it would endanger the appellant's life or hurt him in any way to come to trial. Counsel for the appellants submitted a slip from another doctor in which it was stated that it was unknown if Moore would need skin grafts or not for his burns and that he was to return to this physician's office on May 29 or May 30, 1974, for dressings and further examination.

The appellants state in their brief that Moore:

". . . was taking two times the prescribed dosage of the drug and was mentally incapacitated from the effect of the drug so as to lack the capacity to meaningfully participate in his defense or in the defense of the Co-Defendant, Queen."

The foregoing statement is totally and wholly unsupported by any evidence in the record, including the statements from the two doctors.

The record shows that the appellant Moore fully participated in the trial, testified in his own behalf, denied the charge against him, and related his own version of what happened. There is nothing in this record to indicate that

Moore lacked the capacity to participate in his own defense or in the defense of Queen.

We have held that a motion for a continuance is addressed to the discretion of the trial judge and his refusal of such motion will not be reversed unless it is shown that there was an abuse of discretion to the prejudice of the appellant. *State v. Harvey,* 253 S. C. 328, 170 S. E. (2d) 657. In the cases of *State v. Lee,* 58 S. C. 335, 36 S. E. 706; *State v. Francis,* 152 S. C. 17, 149 S. E. 348, 70 A. L. R. 1133; *State v. Rickenbacker,* 138 S. C. 24, 135 S. E. 651; *State v. Whitener,* 228 S. C. 244, 89 S. E. (2d) 701, and *State v. Young,* 243 S. C. 187, 133 S. E. (2d) 210, this Court held that there was no abuse of discretion in refusing to continue the case because of the defendant's physical condition. Upon the record before us, we find no abuse of discretion here.

The second question presented is whether the trial judge erred "in exceeding his discretionary power and in making unrelated comments prior to the trial to the jury to the effect that in order to bring law enforcement to Barnwell County, guilty verdicts must be returned, thereby prejudicing the defendants' right to a fair and impartial trial." A motion for a continuance was based upon this ground.

It should be noted that the appellants charged the trial judge with making the comment that in order to bring law enforcement to Barnwell County *guilty verdicts must be returned.* (Emphasis added.) The trial judge, responding to this accusation, said:

"I made no such statement that anyone who is tried here should be found guilty. The statement I made was that law enforcement begins at the local level, and only that statement, that law enforcement begins at the local level, and I made it in every courtroom that I hold court in the State of South Carolina."

We have examined with care the remarks that occurred in a colloquy between the trial judge and counsel for the appellants and conclude that the trial judge did not make the statement that guilty verdicts must be returned in order to bring law enforcement to Barnwell County, and further that these comments could not be so construed.

It is apparent to us that the comments to which the appellants objected were addressed to the grand jury at the opening of the term of court in Barnwell County, and at that time, no petit jury had been empaneled. A wide discretion is generally allowed the presiding judge in directing the attention of a grand jury to particular subjects of inquiry, or to particular offenses, or classes of offenses. However, the trial judge should confine himself to calling the grand jury's attention to crimes generally, and should refrain from giving an inflammatory or prejudicial charge and from expressing any opinion as to the guilt or innocence of any particular person. 38 Am. Jur. (2d), Grand Jury, Section 19, Page 966.

In *State v. Walker*, 79 S. C. 107, 60 S. E. 309, this Court held that general instructions to a grand jury cannot constitute ground for reversing verdict of a petit jury. In *State v. Owens*, 79 S. C. 125, 60 S. E. 305, we held that instructions to grand jury before petit jury is empaneled, without reference to any case, and with no intent to comment on the facts of any case, cannot be urged as error on appeal from sentence on verdict of petit jury. In this connection, attention is directed to the cases of *State v. Glenn*, 88 S. C. 162, 70 S. E. 453; *State v. Moody*, 94 S. C. 26, 77 S. E. 713, and *State v. Alverson*, 120 S. C. 273, 113 S. E. 120.

The appellants cite the case of *State v. Barker*, 128 S. C. 372, 122 S. E. 494. We held in the cited case that a vigorous criticism of petit juries in general for failing to convict in murder trials, made by the trial judge to the grand jury

in the presence of the petit jury trying the defendant for murder just before the conclusion of the testimony, was reversible error. It is apparent that the rule announced in the case has no application here.

It is the duty of jurors to take the law from the court in the particular case on trial. It must be presumed that they do so. In the instant case, the trial judge instructed the jury that the appellants had entered a plea of not guilty and that they were presumed to be innocent of the charges in the indictment and that the presumption of innocence continued until the State satisfied the jury of their guilt beyond a reasonable doubt. He also instructed the jury that they were the sole judges of the facts in the case and that he was not permitted to indicate any opinion as to the weight or sufficiency of the evidence or the credibility of the witness. His specific charge was as follows:

"I am not permitted to invade your province and tell you what I think the facts of this case are; I'm not permitted to do that. And if by chance you've gathered any inference whatsoever from any action, saying, or ruling on my part as to what I think the facts of this case are, you'll disregard such inference, because that was not my intention. And that means, and necessarily means, that you, and you alone, are the sole, the only judges of the facts and of the credibility, or believability, that's what credibility means, believability of the witnesses."

We think the trial judge was correct in refusing the motion of the appellants for a continuance upon the ground that his comments had prejudiced their rights to a fair and impartial trial.

The appellants allege that the trial judge abused his discretion in sentencing each of them to imprisonment for a term of five years.

The punishment for distribution of marijuana, first offense, is by a term of imprisonment of not more than five years or a fine of not more than $5,000, or both. Section 32-1510.49(a)(2) of the Code, as amended.

We have held that this Court has no jurisdiction to disturb, because of alleged excessiveness, a sentence which is within the limits prescribed by law. The sentence here of five years, although the maximum, was within the limits permitted by law and no abuse of discretion is shown. *State v. Fogel,* 256 S. C. 149, 181 S. E. (2d) 483. There is nothing in the record to indicate that the sentence was the result of partiality, prejudice, oppression, or corrupt motive.

The exceptions of the appellants are found to be without merit, and the judgment below is,

Affirmed.

LEWIS and LITTLEJOHN, JJ., concur.

BUSSEY, J., dissents.

NESS, J., disqualified.

BUSSEY, Justice, (dissenting):

Not being convinced that the convictions and sentences herein should be affirmed, I most respectfully dissent. Essential to a proper disposition of the issues is, I think, a somewhat fuller statement of the factual situation.

The defendants-appellants aged 19 and 20 respectively, were charged with and convicted of a single isolated, solicited sale of slightly more than 1/7 of 1 ounce of marijuana and upon conviction were each sentenced to the maximum term of imprisonment which could be imposed, to wit: 5 years. Both defendants were employed construction workers and there is nothing in the record to suggest that either of them, if guilty, had ever had any other connection with marijuana or any other controlled substance. Their conviction rested solely and entirely upon the testimony of one, Mrs. Ramsey, whose age does not appear in the rec-

ord, but whose youngest son was apparently a contemporary acquaintance of the defendant Queen, Mrs. Ramsey being inferentially a middle-aged woman.

According to her testimony the sale of marijuana occurred in the front yard of the Ramsey residence in the City of Barnwell between 10 and 11 p. m. on the night of March 8, 1974, and the sale was made from a van occupied by the two defendants and one Eddie Queen, a brother of the defendant Queen. The defendant Moore was known to Mrs. Ramsey only by sight and not by name. There had been a cookout at the Ramsey residence and a number of guests were present. According to the testimony of Mrs. Ramsey she heard one of the guests, David Satterfield, say to the defendant Queen in the yard "I'm not going to pay you that kind of money for that stuff."

Neither Satterfield nor any other guest of the Ramsey's was called as a witness to confirm any part of Mrs. Ramsey's testimony, but in any event according to her she went into the yard and said to Moore, "What have you guys got on you?" To which Moore replied, "Nothing". She then stated to Moore "Oh come on now. I know you've got something. Don't you have one roll?" And Moore said "No, but I've got $5.00 worth I'll sell you." To which Mrs. Ramsey said "Okay." She then went into the house, got five $1.00 bills and handed the same to Moore and in turn defendant Queen handed her a plastic bag which contained the small portion of marijuana. Shortly thereafter Mrs. Ramsey contacted the police, delivered the plastic container to them and the officers intercepted the defendants still traveling in the van and searched both the defendants and the van, which search produced no other marijuana. There was undisputed evidence that upon this search Moore did not have upon his person even one of the $1.00 bills allegedly given him by Mrs. Ramsey shortly theretofore.

Officer Sanders, one of the arresting officers, obtained an arrest warrant from Judge Harry Birt at about 11 p. m. on the night of the alleged sale. In the affidavit Officer Sanders gave as the source of his information an individual "acting in an undercover capacity." He denied on the stand, however, that he had so told Judge Birt although he had so sworn in the affidavit and also denied any knowledge of Mrs. Ramsey being an undercover agent. Mrs. Ramsey swore that she was not an undercover agent and no charge as to the law of entrapment was asked for or given.

Both defendants testified and denied having made or participated in any sale of marijuana to Mrs. Ramsey. Eddie Queen, brother of the defendant Queen testified that the marijuana acquired by Mrs. Ramsey was sold by him to Mrs. Ramsey for $5.00 and that neither of the defendants had any knowledge of the marijuana or any connection with the sale. That such was the only marijuana he ever had; that he had obtained the same from a man in West Columbia some days before; understood from one of Mrs. Ramsey's sons that she smoked pot and that Mrs. Ramsey begged him to make the sale.

The evidence shows that there was drinking at the cookout held at the Ramsey home and evidence is quite conflicting as to Mrs. Ramsey's state of sobriety or drunkenness at the time of the marijuana sale. There is evidence that she was relatively sober and evidence that she was quite drunk, but, even according to her testimony she had had five or six beers in the course of the evening. As above mentioned none of the guests were called to corroborate any portion of Mrs. Ramsey's testimony, but one of her guests testified for the defense that Mrs. Ramsey was drunk.

When the case came on for trial the defendants moved for a continuance on the ground, *inter alia,* that the remarks of the trial judge to the petit jury venire upon the opening of court tended to deprive the defendants of the right to

trial before a fair and impartial jury. Unfortunately there is no record of precisely what the trial judge said or the context in which such was said. The record does contain, in connection with the motion for continuance and a subsequent motion for a new trial on the same ground, an extensive colloquy between counsel and the court as to what was said by the court and how such might or might not have been interpreted by the petit jurors to the prejudice of the defendants. Such colloquy, at best, gives this Court only an approximate inferential picture of what actually occurred.

Understandably, counsel was under some degree of restraint in giving counsel's version of the episode. On the other hand it is obvious that His Honor was not conscious of having said anything which prejudicially affected the rights of the defendants or else he would have granted the motion. Under the circumstances of this case we are confronted with a quite serious question as to whether or not there were prejudicial remarks which resulted in the denial of the right of defendants to a trial before a fair and impartial jury. Must the answer thereto, however, rest only upon the recollection of the trial judge as to what he said, the context in which said, and his construction of the remarks?

As nearly as we can ascertain the pertinent facts and inferences therefrom are about as follows. At the summer term of the General Sessions Court in Barnwell County in 1973 there was tried before the trial judge a robbery case of some notoriety in which the jury returned a verdict of not guilty. It apparently was no secret around the courthouse and among the Bar of Barnwell County that His Honor was not well pleased with such verdict. To what extent the general public, in a county the size of Barnwell, was aware of His Honor's disapproval is, of course, a matter of speculation in the absence of proof thereabout.

At the 1974 summer term in Barnwell County at which the defendants were convicted, His Honor was holding his last session of criminal court in that county. Upon the opening of court he apparently addressed the grand jury, the members of the petit jury venire, the Bar and the spectators at some length. In the course thereof he reminisced considerably, told about a personal experience when practicing of not pleading a client guilty who should have pled guilty and the travail that followed, mentioned the robbery case of 1973, and gave a law and order charge to the jurors emphasizing that the failure to enforce the law would result in chaos in Barnwell County. While I am sure that His Honor meant or intended no prejudice to any of the defendants no logical reason appears or is given for his mentioning the 1973 case regardless of what he said or didn't say thereabout.

It is the contention of the defendants that the remarks of His Honor taken in their entirety tended to urge the jurors to bring in guilty verdicts or else face chaos in Barnwell County and displeasure from the trial judge. If his remarks were such as to produce such an effect on the minds of the jurors, it is highly improbable that *voir dire* examination and standard charges on the presumption of innocence, reasonable doubt, etc. could possibly cure such prejudice.

In the absence of a record of what actually occurred this Court is, of course, not in position to decide with any degree of certainty whether or not the constitutional right of the defendants to a fair trial was prejudiced. The absence of a record, however, is not the fault or responsibility of the defendants. Under the American Bar Association Standards of Criminal Justice, the Function of the Trial Judge, section 2.5, we find the following provision: "The trial judge has a duty to see that the reporter makes a true, complete and accurate record of all proceedings." I do not think that

the quoted standard, or any other requirement, necessarily compels a trial judge to make a complete record of general or purely formal remarks made to either a grand jury or a venire of petit jurors. I think, however, that it is clearly incumbent upon a trial judge, whenever he departs from a well beaten path and makes any unnecessary statements to jurors which conceivably could have a prejudicial effect, to see that a complete record be made to the end that the rights of the defendants in criminal cases be fully protected and that a reviewing court would not have to speculate about whether or not his remarks were prejudicial.

Since the record clearly discloses what is a possibility if not a probability of the denial of the constitutional rights of the defendants any reasonable doubt thereabout should be resolved in favor of the defendants. In *Chapman v. California,* 386 U. S. 18, 87 S. Ct. 824, 17 L. Ed. (2d) 705, it was held that where a trial error was of constitutional dimension such could not be harmless error unless such could be determined to be clearly harmless beyond a reasonable doubt. Under the circumstances of this case, where no record was made by the court, and it is asserted that a constitutional error was made to the prejudice of the defendants, I would have no hesitancy in holding that all reasonable doubt, as to whether such an error was made, should be resolved in favor of the defendants. I would conclude as did the Court in *State v. Sharp,* 239 S. C. 258, 122 S. E. (2d) 622 (1962), that this Court "in order to remove all doubt as to whether the appellant(s) received a fair and impartial trial guaranteed * * * by the Constitution of this State and of the United States that this Court should reverse * * * and remand the case to the lower court for a new trial."

With respect to the sentences imposed it is, of course, true that the general rule is that a sentence within the limits prescribed by law will normally not be disturbed by this

Court because of alleged excessiveness. At the same time we have always recognized that even though within the statutory limits a sentence under the circumstances of a particular case may be so grossly disproportionate to the offense committed as to constitute cruel and unusual punishment in violation of the Constitution of this State. See *State v. Gregory,* 198 S. C. 98, 16 S. E. (2d) 532; *State v. Gamble,* 249 S. C. 605, 155 S. E. (2d) 916; and *State v. Kimbrough,* 212 S. C. 348, 46 S. E. (2d) 273.

In the instant case, assuming the truth of Mrs. Ramsey's testimony she was able to solicit a sale by the defendants to her of slightly more than 1/7 of 1 ounce of marijuana. The sentences imposed upon the defendants were as heavy as the court could have imposed had they been hardened criminals and had offered for sale, or sold, after advertisement and solicitations by them, a warehouse full of marijuana for a million dollars. I am unable to ascertain anything in the record which would justify such a harsh sentence upon these defendants. They were both quite young working men. The defendant Queen had a juvenile record which His Honor expressly did not consider and the only other record he had was one offense of disorderly conduct where he paid a $30.00 fine. Moore had a prior record, he having been charged on two different occasions with petty larceny in both of which his mother apparently posted and forfeited a bond in the amount of $25.00, Moore denying his guilt and never having been tried. His only other record appears to have been one for disorderly conduct and one or two traffic violations. Neither of the defendants had any record for any offense remotely related to the one here involved.

When all circumstances are considered the sentences imposed were so grossly disproportionate to the offense committed as to be, I think, cruel and unusual within the meaning and contemplation of the Constitution. The granting of

a new trial would render unnecessary the decision of this constitutional issue. But in the absence of a majority of the Court being convinced that the defendants are entitled to a new trial, at least the sentences should be vacated and the cause remanded for the imposition of sentences which would not be violative of the Constitution.