526 P.2d 808

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Jose E. QUINTANA, a/k/a Henry Quintana, Defendant-Appellant.**

**No. 1291.**

Court of Appeals of New Mexico.
Aug. 21, 1974.
Certiorari Denied Sept. 20, 1974.

Wood, C. J., filed specially concurring opinion.

Sutin, J., concurred in part and dissented in part and filed opinion.

Dale B. Dilts, Paul T. Demos, Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Andrea Buzzard, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

As the result of an altercation in a bar in which Roberto Roybal was killed by gunshot wounds, the defendant was charged with murder, contrary to § 40A-2-1, N.M.S.A.1953 (2d Repl.Vol. 6). He was convicted of second degree murder.

From judgment and sentence against him, he appeals raising issues concerning: (1) substantial evidence; (2) criminal discovery; (3) right to counsel; and (4) instructions. We affirm.

### Substantial evidence

■ The defendant moved for a directed verdict at the close of the state's case in chief. He contended that there was insufficient circumstantial evidence and no direct evidence to the effect that he shot the deceased. He asserts the denial of the motion as an independent point on appeal.

After the denial of the motion, defendant took the stand, admitted that he fired the shot and asserted the defense of self-defense. In so doing he waived the error, if any, in the denial of his motion. State v. Lard, 86 N.M. 71, 519 P.2d 307 (Ct. App.1974).

■ Defendant also argues that, " * * * [a]ll of the evidence pointed to * * * self-defense * * *," and that therefore there was insufficient evidence to imply malice. We disagree. Malice may be implied by the use of a deadly weapon. State v. Anaya, 80 N.M. 695, 460 P.2d 60 (1969); State v. Ochoa, 61 N.M. 225, 297 P.2d 1053 (1956).

■ Defendant also claims an insufficiency of evidence at the close of the defense case. This contention involves the malice claim which we have answered. This contention also is directed to the credibility of the witnesses. Credibility of the witnesses was for the jury. Testimony as to the circumstances immediately prior to the shooting, together with defendant's testimony, is substantial evidence supporting the conviction.

### Criminal discovery

Pursuant to defendant's motion, the trial court ordered compliance with Rules 27 and 29, N.M.R.Cr.P., §§ 41-23-27 and 41-23-29, N.M.S.A.1953 (2d Repl.Vol. 6, Supp.1973), relating to criminal discovery. Alleging that the state failed to comply with the order in a timely and satisfactory manner, the defendant moved alternatively for an order prohibiting the state from introducing any evidence or for a continuance. Defendant appeals from the denial of that motion. Specifically, he alleges that he was prejudiced by the state's failure to comply with respect to a list of witnesses, FBI ballistics and fingerprint reports on the gun and bullet and an FBI report matching blood types of specimens found on the deceased's tee-shirt and the defendant's vest.

In State v. Billington, 86 N.M. 44, 519 P.2d 140 (Ct.App.1974), we held that the failure of the state to notify the defendant until the day of trial that it intended to use the testimony of a critical witness prejudiced the conduct of the defense. While the district attorney's failure to strictly comply with the rules and the court's order in the instant case cannot be condoned, we do not feel that substantial rights of this defendant have been prejudiced.

■ The state failed to supply the defendant with the, " * * * list of the names and addresses of all witnesses which the district attorney intends to call * * *," contemplated by Rule 27(b), supra. However, most of the witnesses eventually called either had their names endorsed on the back of the information or testified at the preliminary hearing. There is no factual basis in the record indicating that the state did not intend to call these witnesses. Cf. State v. Billington, supra.

In *Billington,* we stated that the purpose of Rule 27(b), supra, are as follows: (1)

to facilitate plea discussions; (2) to facilitate preparation for cross-examination; and (3) to allow the taking of a deposition or statement. There is no showing that the state's failure to strictly comply with the rule interfered with any of these purposes. Well before trial, defense knew of the existence of the witnesses who were endorsed or who testified in pre-trial proceedings. Counsel could have taken and in some instances did take statements or depositions of these witnesses to learn the substance of their testimony. The rule was substantially complied with as to these witnesses.

■ Three witnesses who were not listed on the information or who did not testify earlier also testified at trial. One was Charles Dunn. He was an employee of the funeral home where the deceased's body was taken. His testimony related solely to the chain of custody of the decedent's tee-shirt, which was later introduced into evidence. His testimony was merely technical. The second witness was Dr. James Saltz. He testified as to the medical cause of death. His testimony was merely technical and cumulative. The jury could have inferred that death was caused by the bullet from other testimony. We indicated in *Billington* that before defendant could be prejudiced, the testimony of the omitted witness must be important and critical, not technical or cumulative.

■ The third witness, James Porter, presents a more difficult problem. He was an FBI agent who performed blood-grouping tests upon deceased's tee-shirt and defendant's vest. The conclusion of the tests and the substance of his testimony was that Type A human blood was found on both garments. The state verbally informed defense counsel of the test results. It did not list Mr. Porter as a witness. It did not provide written copies of the test results nor did it make the specimens available for independent testing by the defense.

We feel, nevertheless, that the failure to comply with the rules was not prejudicial to the conduct of the defense. The defense was aware of the test results so they were able to prepare for cross-examination to some extent. We do not feel that more intensive cross-examination, even to the extent of proving the test results inconclusive, would have materially aided the defense. It certainly would not have altered the verdict. By the time the case went to the jury, the defendant had already admitted shooting the deceased. The purpose of Agent Porter's testimony was to help prove that fact. No claim is made that had the test results been inconclusive, the defendant would have changed his strategy and not claimed self-defense.

An intensive cross-examination likewise would not have aided the defense in pressing its motion for a directed verdict at the close of the state's case in chief. The testimony of Agent Porter on direct examination would have still stood as substantial evidence no matter how much doubt could have been placed upon it by an effective cross-examination. A jury question would still have existed. Furthermore, we do not think that the results of the blood grouping tests were critical. The critical fact was that both the deceased and the defendant had substantial amounts of blood on their clothing after shots were heard. This evidence tends to place the defendant in close physical proximity to the deceased at the time of or immediately after the shooting. The jury would have been entitled to infer without the benefit of Agent Porter's testimony that the blood found on defendant's vest did not come from a source other than the deceased. That testimony merely confirmed the obvious and made the inference irresistible. The case would have gone to the jury with or without his testimony.

■■ As to the FBI tests on blood, fingerprints and ballistics and as to tangible objects recovered at the scene of the crime, there is no factual basis in the record showing that the state did not comply with the trial court's order. The order required the state to, "[p]roduce and permit the Defendant to inspect . . . ," the relevant tangible objects and test results. The rule

does not necessarily contemplate the physical delivery of the items into the hands of defense counsel. Rule 27, supra, contemplates a request specifying, ". . . a reasonable time, place and manner of making the *inspection* and performing the related acts." The defendant did not make such a request but instead went directly to the trial court and obtained an order. The order made no such specification. There is no showing that the defense counsel sought to arrange and have the state produce and permit inspection of the items. Had he either done that or strictly complied with the rule, the problem would not have arisen. On this record, he cannot complain.

■ The defendant finally claims a violation of the state's continuing duty to disclose a beer can introduced into evidence. See Rule 30, N.M.R.Cr.P., § 41–23–30, N.M.S.A.1953 (2d Repl.Vol. 6, Supp.1973). There was no objection to the introduction of this evidence on the basis of duty to disclose.

### Right to counsel

■ Defendant claims the trial court erred in holding an arraignment and setting bond for defendant on February 13, 1973, in the absence of counsel. Defendant does not have his facts straight. The record shows the February 13th hearing was defendant's first appearance in court. At this first appearance, the trial court proceeded in accordance with § 41–23–19, N.M.S.A.1953 (2d Repl.Vol. 6, Supp.1973).

The trial court informed defendant of his right to bail and set bond at $20,000.00 "at the present time." It stated that if counsel wished to bring the matter of bail to the court's attention, a hearing would be held. No issue was thereafter raised concerning the bail bond. The record indicates defendant was out on bail pending the trial. Defendant is in no position to complain of the trial court setting a bond at the first appearance rather than waiting until counsel appeared in the case.

Defendant was not arraigned at this first appearance. When arraigned, defendant was represented by counsel.

### Instructions

■ Defendant claims the instructions overemphasized the charges against him, that the instructions were "top-heavy" in repeating "the elements and facts" of each charge, that the instructions were repetitious and redundant. We disagree.

Four charges were submitted to the jury. Five instructions dealt with first degree murder. One of the five gave the statutory definition of the crime, two of the five defined elements of the crime, one stated the material allegations required to be proved, and one applied the previous instructions to the facts. The instructions on second degree murder, voluntary manslaughter and involuntary manslaughter defined those offenses, stated the material allegations of the offense and applied the instructions on those offenses to the facts.

There was no overemphasis, repetition or redundancy in the instructions given.

The judgment is affirmed.

It is so ordered.

WOOD, Chief Judge (specially concurring).

I concur in the result on all issues. This special concurrence concerns the "criminal discovery" issue and is written to emphasize the appellate issue when there is a claim that disclosure rules have been violated.

When there is a failure to disclose as provided by the rules, § 41–23–30, N.M.S.A. (2d Repl.Vol. 6, Supp.1973) states:

"[T]he court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from calling a witness not disclosed, or introducing in evidence the material not disclosed, or it may enter such other order as it deems appropriate under the circumstances."

The alternatives available are within the trial court's discretion. The appellate issue is whether the trial court abused its discretion. See dissenting opinion in State v. Billington, 86 N.M. 44, 519 P.2d 140 (Ct.App.1974). In determining whether there has been an abuse of discretion, it is proper to consider whether the party seeking disclosure has been prejudiced by the non-disclosure. Dissenting opinion, State v. Billington, supra.

Three categories of items are involved in this case. One category involves tangible objects and reports. The court order required the State to produce and permit the inspection of these items. Defendant asked for the report of one medical witness. The State had no such report. The defense never sought the production of any of the other items in this category. Defendant knew of the existence of the tangible objects and of the contents of several of the reports well in advance of trial. The district attorney received no instruction "as to where to send any physical evidence."

Defendant had an obligation to advise the State as to where and when the items in this category were to be produced for inspection. See § 41-23-27, N.M.S.A.1953 Comp. (2d Repl.Vol. 6, Supp.1973). He did not do so. Not having done so, the State did not violate the court order requiring the production and inspection of items in this category.

A second category involves witnesses listed on the information and witnesses who testified at the preliminary examination. Defendant admits he knew of these witnesses. His complaint is that he was not formally told of the district attorney's intent to call the persons in this category as witnesses at the trial. The trial court correctly ruled there had been substantial compliance with the discovery rules as to the witnesses in this category.

The third category is the only category involving nondisclosure under the rules. This third category involves three witnesses whose names were belatedly disclosed.

As Judge Lopez points out, the testimony of two of the three (Dunn and Saltz) was technical and the testimony of the third (the FBI agent) was essentially cumulative. Judge Lopez points out that defendant was not prejudiced by the belated disclosure of these three witnesses.

The defendant sought to exclude certain evidence or in the alternative, a continuance. The trial court did not abuse its discretion in denying these requests because: (a) there was no violation of disclosure rules as to tangible objects and reports; (b) there was no violation of disclosure rules as to witnesses known to defendant; and (c) the belated disclosure of technical and cumulative witnesses was not prejudicial.

SUTIN, Judge (concurring in part and dissenting in part).

I concur and dissent.

(1) *Defendant's claim of self-defense was met by trial court.*

The majority opinion states:

Defendant also argues that, ". . . [all] of the evidence pointed to . . . self-defense . . . ," *and that therefore there was insufficient evidence to imply malice.* (Emphasis added).

Defendant did not contend "there was insufficient evidence to imply malice." As I read his claim, he contended that all of the evidence pointed to self-defense. Defendant's motion at the close of the state's case was that " * * * the only evidence regarding what happened * * * is clearly that the first shot was based on self-defense, * * * there is nothing to rebut that, * * *." We have actually proved that there was a legal and justifiable excuse. The first one is self-defense.

"Implied malice" is not an issue on self-defense. It is an essential element of murder. Self-defense is a defense known as excusable and justifiable homicide. To seek an acquittal of homicide by reason of self-defense, as a matter of law, the evidence must be sufficient to sustain a directed verdict for the defendant. The

trial court decided the issue of self-defense was a question of fact for the jury.

The trial court submitted the issue of self-defense to the jury. At least five instructions were given on this subject. The state proved beyond a reasonable doubt that the defendant was guilty of second degree murder.

In his defense, the defendant testified that he went to the Chiquita Bar to pay a bill and sell his gun. After some argument about playing pool, he started back to the liquor bar and the decedent, whom he had never seen before, hit him on the back of his head with a cue stick and made him stagger. When defendant turned around, decedent kicked him and "buckled" him, and hit him again on the side of the head. Defendant got his gun out and decedent came after him using some pretty nasty words about the gun. Defendant was scared and fired his first shot between decedent's legs. Decedent kept coming. Defendant wanted to shoot again, but someone hit the defendant and he fell forward on his knees. He had an upset stomach and was dizzy and went to the rest room and threw up. He returned to the bar, had a drink of tequilla and waited until the police came.

This testimony does not constitute self-defense. Defendant presented no testimony that he inflicted the fatal wound on the decedent. Even if he did, appellant's defense was not believed by the jury. State v. Lopez, 79 N.M. 282, 286, 442 P.2d 594 (1968).

I concur with the majority opinion on this matter.

(2) *Defendant was prejudicially denied his discovery rights.*

On March 5, 1973, the trial court ordered the district attorney to comply with the discovery provisions of Rule 27. The district attorney had 10 days to comply. Rule 27(d) of the Rules of Criminal Procedure [Section 41–23–27(d), N.M.S.A. 1953 (2nd Repl.Vol. 6, Supp.1973)]. The district attorney did not comply.

The order provided for the district attorney (1) to produce and permit the defendant to inspect objects which are within possession of the state which are intended for use by the state as evidence at the trial, "including, but not limited to, any firearms, bullets and vest." The same day, a second order was entered that the district attorney release the firearms, bullets and vest to defendant's attorney for the purpose of having experts hired by the defense to study and examine the same and make a report of their findings. (2) to produce a list of the names and addresses of all witnesses which the district attorney intends to call at the trial.

On April 10, 1973, some 35 days later, on the morning of trial, defendant moved for a continuance under Rule 30 because he had not received the names of the witnesses, and had not been furnished the material evidence for inspection. This motion was renewed in a motion for a new trial. The motion was denied.

The denial of the continuance, the denial of the motion for a new trial were reversible error.

(a) *Failure to produce state's witnesses.*

On the morning of trial, the court advised the jury of the names of witnesses the state may call and asked:

Are any of these witnesses kin to any of you ladies and gentlemen?

There were some affirmative answers. The names of witnesses for the state not mentioned, but called on to testify, were Dr. James E. Saltz, Arthur L. White, a patrolman, Charles Dunn, an apprenticed embalmer, and James A. Porter, Jr., special agent for the F.B.I. This was grossly unfair to defendant.

Furthermore, if the district attorney does not disclose all the names of witnesses he will call for trial, defendant loses his right to take depositions, prepare for cross-examination, and provide the defendant with adequate assistance of legal coun-

sel. It is of no significance that witnesses at trial had previously testified in preliminary hearings, grand juries, or were those of whom he had knowledge who might testify if called. Defendant should not be forced at trial to meet the challenge of unreported witnesses in the field of battle for life. When the district attorney failed to comply with the court's order and the court violated its own order by refusing to grant defendant a continuance or a new trial, substantial justice has lost its virtue.

Of what value are our rules of criminal procedure if they can be flouted indiscriminately? "These rules are intended to provide for the just determination of criminal proceedings." Rule 2. The commentary says:

> Rule 27 is "self-executing." Upon request of the defendant, subject to protective order, the government *must* disclose its witnesses and evidence discoverable under Rule 27. (Emphasis added).

In State v. Billington, 86 N.M. 44, 519 P.2d 140 (Ct.App.1974), we said:

> District attorneys should not have the right to "inadvertently" overlook disclosing important witnesses until the day before trial, the morning of trial, or during trial.
>
> *    *    *    *    *    *
>
> Defendant was entitled to a continuance as a matter of law.

The time has come once again to remind each district attorney that he has a duty, not to seek conviction alone by any means. He has a duty to give the defendant a fair trial. Trial judges have the same duty. In State v. Chambers, 86 N.M. 383, 524 P.2d 999, decided June 19, 1974, we quoted the following with approval:

It is as much the duty of prosecuting attorneys to see that a person on trial is not deprived of any of his statutory or legal rights as it is to prosecute him for the crime with which he may be charged.

*    *    *    *    *    *

Courts owe a duty to themselves, to the public, and to the legal profession. The due and orderly administration of justice, the honor of the legal profession, and the dignity of the court forbid such practice.

Under Rules 27 and 28 of the Rules of Criminal Procedure, the state and the defendant have a reciprocal duty to disclose. "The essential constitutional basis from which this right and duty derive is the due process clause of the Fifth and Fourteenth Amendments." 8 Moore's Federal Practice. Rules of Criminal Procedure, § 16.-06.

(b) *Failure to produce material evidence.*

The district attorney failed to produce the "firearms, bullets and vest." Each of these items were used to convict the defendant. The defendant did not have these items for purposes of having experts examine them.

A complete failure by the district attorney to comply with the court's orders denied the defendant pre-trial discovery. This case should be reversed and defendant should be granted a new trial. Otherwise, the rules of pre-trial discovery are redundant. They might as well be removed from the Rules of Criminal Procedure and dumped in the waste paper basket.

I dissent on the failure of the district attorney to comply with the court's orders on pre-trial discovery.