556 P.2d 43

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Alfredo B. RAMIREZ, Defendant-Appellant.**

**No. 2379.**

Court of Appeals of New Mexico.

Oct. 19, 1976.

Bruce L. Herr, Acting Chief Public Defender, Sarah M. Singleton, Acting Appellate Defender, Don Klein, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Albert V. Gonzales, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

Defendant, Alfredo Balderrama Ramirez, appeals the verdict of a Dona Ana County jury finding him guilty of two counts of second degree murder. Section 40A–2–1B, N.M.S.A.1953 (2d Repl. Vol. 6, 1972). We affirm.

The defendant asserts four points on appeal: lack of jurisdiction; error in the exclusion of tests conducted by the State police laboratory; error in refusing instructions to the jury concerning manslaughter; and error in the admission of a confession because not voluntary nor pursuant to a waiver of constitutional rights.

On a Spring night, April 24, 1974, at about 10:14 p.m. two bodies were discovered, one on each side of a dirt road in Anthony, New Mexico. Hector Carabajal and Francisco Padilla, shot at close range, were dead with multiple head wounds.

On December 2, 1974, the defendant was brought to the Roosevelt County jail in Portales after his arrest on murder charges. The deputy sheriff of Portales advised Ramirez of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

On December 4th, the defendant was picked up in Portales by the Las Cruces police and taken to the Dona Ana County jail. Prior to departure, the defendant was read his constitutional rights, both in Spanish and in English, and acknowledged

that he understood. Later, during a motion to suppress, defendant denied having received the warnings prior to leaving Portales for Las Cruces. That afternoon, defendant was arraigned before a magistrate and in the courtroom was given *Miranda* rights in English and Spanish. Defendant requested appointed counsel so the court asked the arresting officer to help Ramirez fill out the necessary forms.

Soon after the December 4th arraignment, defendant indicated to officer Raymond Pantoja that he wanted to talk. Under-sheriff Edward DiMatteo testified that he spoke with the district court clerk to see whether counsel had been appointed, but the defendant did not insist on the presence of an attorney. Defendant was given his *Miranda* rights in Spanish and signed a constitutional rights notification certificate and waiver form before giving the statement. The statement was given in Spanish and was recorded on magnetic tape and taken into shorthand; subsequently, it was transcribed into English. The December 4th statement indicated no involvement with the murders.

Two days later, during his daily morning rounds of the jail, DiMatteo was informed by the defendant that he wanted to talk. DiMatteo was busy and forgot to get back to the defendant. Later that afternoon, Ramirez communicated to DiMatteo, through the jailer, that he wanted to talk. DiMatteo testified he informed the defendant to wait until an attorney was present, but Ramirez was insistent. DiMatteo testified he learned from the district court clerk that defendant had been appointed counsel. To no avail, he called the defense lawyer twice. Ramirez was given his *Miranda* rights, and again signed a Spanish waiver form. The procedure followed with the December 4th statement was repeated: the statement was recorded, transcribed, and translated into English. The December 6th statement told a highly incriminating story which effectively confessed the double crime.

At the suppression hearing, Ramirez stated he wanted to talk to the sheriff merely to contact his lawyer. The defendant stated he did not understand the full meaning of the *Miranda* warnings; in particular, he did not understand that his statements could be used against him. Nonetheless, the trial court allowed the December 4th and 6th statements to be introduced into evidence; both were given to the jury.

### Voluntariness of Statements and Compliance with Miranda

■ Defendant asserts the trial court committed error by not suppressing the two statements as involuntary and not pursuant to a knowledgeable, intelligent waiver of rights. Voluntariness relates to the trustworthiness or reliability of the statements, whereas waiver of rights relates to the compliance with the strictures of *Miranda*. *Miranda* requires law enforcement officers, before questioning someone in custody, to give specified warnings and follow specified procedures during the course of an interrogation. Any statement given without compliance with these procedures cannot be admitted in evidence against the accused over his objection. This is true even if the statement is wholly voluntary. *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

At a hearing on a motion to suppress, evidence was introduced, briefs submitted, and oral argument taken on the issues of voluntariness and waiver. At the completion of this hearing, the trial court concluded the defendant's confession was:

". . . legally obtained inasmuch as the [d]efendant, having been advised of his civil and constitutional rights and having understood the same, freely and *voluntarily* submitted to interrogation after knowingly and intelligently *waiving* his right to have counsel present during interrogation and to confer with counsel prior to being interrogated." [Emphasis added].

The defendant questions this finding and contends that the statements should have been excluded.

In the search and seizure context the " . . . prime purpose [of an exclusionary rule] is to deter future unlawful police conduct . . . ." *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). This rationale may be applicable to the right against compulsory self-incrimination. As the Supreme Court has stated:

> "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in wilful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force." *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).

■ Another purpose of an exclusionary rule is related to the quality of the evidence. Before *Miranda* the issue was framed in terms of whether the statement of the accused was "voluntary," which was used as a test for protecting the courts from relying on untrustworthy evidence. Where police conduct offends standards of fundamental fairness under the due process clause, the evidence is excluded.

■ First, Ramirez argues that his December 6th confession was made as the result of promises and inducements. There is no evidence that such were made. The only arguable coercive statements that appear on record are by the arresting officers asking the defendant to cooperate in booking and arraignment.

The right against self-incrimination must involve an element of coercion since the clause provides that a person shall not be compelled to give evidence against himself. We cannot find severe pressures or coercion so unfair or unreasonable rendering a subsequent confession involuntary and untrustworthy, or amounting to a denial of due process. See *Haynes v. Washington,* 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963) (defendant held incommunicado); *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (threat of mob violence); *White v. Texas,* 310 U.S. 530, 60 S.Ct. 1032, 84 L.Ed. 1342 (1940) (defendant whipped and kept incommunicado); *Chambers v. Florida,* 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940) (all night interrogations lasting five days); *Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936) (confession extorted by brutality and violence). Ramirez was promptly arraigned, was not interrogated at length, and was told that he could terminate the questioning at will. The first statement was given on the day of arraignment, the second statement came two days thereafter. The statements were obtained in a manner indicating that they were given voluntarily within the meaning of fundamental fairness. Moreover, the deterrence of overzealous and unlawful police activity would not be served by the exclusion of the statements.

■■ The trial court correctly submitted the statements to the jury after a specific finding of voluntariness. As stated in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964):

> ". . . the jury passes on voluntariness only after the judge has fully and independently resolved the issue against the accused, the judge's conclusions are clearly evident from the record since he either admits the confession into the evidence if it is voluntary or rejects it if involuntary. Moreover, his findings upon disputed issues of fact are expressly stated or may be ascertainable from the record. . . ."

The Massachusetts rule, which is followed in New Mexico, was the procedure used in this case. The judge, on record, passed on

the voluntariness and admissibility of the statements at the suppression hearing. The statements were then submitted to the jury with the following charge:

". . . Before you consider confessions or statements for any purpose, you must determine that the confession or statement was given voluntarily. In determining whether a confession or statement was voluntarily given, you should consider if it was freely made and not induced by promise or threat."

The defendant's argument that his statements were the product of promises and inducements was to be considered with all the conflicting evidence. It is not for this Court to substitute its own judgment for that of the trier of fact and the trial judge; there is no error on this point.

Second, Ramirez argues he did not waive his constitutional rights. The record reflects the waiver in Spanish. The Court takes judicial notice of its English interpretation. We agree with the trial court that the language of the waiver satisfies the requirements of due process under *Miranda*.

The defendant never asserted his right to remain silent. There is evidence that he initiated the conversation that led to his incriminating statements. See *People v. Fioritto,* 68 Cal.2d 714, 68 Cal.Rptr. 817, 441 P.2d 625 (1968). Defendant repeatedly was advised of his *Miranda* rights. A stipulation was read into the record that the magistrate, at arraignment, advised Ramirez of his constitutional rights point by point in English and Spanish. Ramirez was read his constitutional rights before each statement, both times signing the Spanish waiver form.

The evidence is contradicted. Ramirez testified at the motion to suppress that he was coerced into giving the statement and did not understand his rights. The interrogating officers testified the defendant seemed well aware of his constitutional rights and was the one to initiate conversation. It was said in *Coyote v. United States,* 380 F.2d 305 (10th Cir. 1967), cert. denied, 389 U.S. 992, 88 S.Ct. 489, 19 L. Ed.2d 484 (1967), and cited by this Court with approval in *State v. Burk,* 82 N.M. 466, 483 P.2d 940 (Ct.App.1971), cert. denied, 404 U.S. 955, 92 S.Ct. 309, 30 L.Ed.2d 271 (1971):

" 'It is, of course, always open to an accused to subjectively deny that he understood the precautionary warning and advice with respect to assistance of counsel. When the issue is raised in an admissibility hearing . . . it is for the court to objectively determine whether in the circumstances of the case the words used were sufficient to convey the required warning.' "

The instant case presents a factual setting very much like *Burk*. In both cases the defendant repeatedly was advised of constitutional rights; there is evidence that the defendant sought the interview at which the incriminating statement was made; the defendant signed a waiver form; and there is evidence the defendant replied he understood his right to an attorney but that he would talk without the presence of counsel.

It was for the trial judge to resolve the conflicts in the evidence at the suppression hearing. *State v. Burk,* supra. The trial court ruled the State met the burden of establishing the defendant knowingly and understandingly waived his right to the presence of counsel. Ramirez effectively waived his rights. See *State v. Rascon,* 89 N.M. 254, 550 P.2d 266 (1976).

It is suggested that the waiver form was not countersigned by a district public defender. Section 41–22A–12(D), N.M.S.A.1953 (2d Repl. Vol. 6, Supp.1975). This is true. But we do not consider whether this constitutes reversible error because the issue was not raised below nor briefed and supported by authority on appeal. *State v. Alderete,* 88 N.M. 619, 544 P.2d 1184 (Ct.App.1976); *Doe v. State,* 88 N.M. 347, 540 P.2d 827 (Ct.App.1975); *Novak v. Dow,* 82 N.M. 30, 474 P.2d 712

(Ct.App.1970); N.M.R.Crim.App. 308 [Section 41–23A–308, N.M.S.A.1953 (2d Repl. Vol. 6, Supp.1975)].

■ It is for the trial court, in the first instance, to weigh the evidentiary conflicts. There is substantial evidence to support the ruling of the trial court, and we cannot find error as a matter of law. *State v. Briggs,* 81 N.M. 581, 469 P.2d 730 (Ct.App. 1970).

*Jurisdiction*

■ The defendant asserts the trial court lacked jurisdiction because there was insufficient evidence to show the defendant murdered the victims in New Mexico. The defendant states the correct rule of law: to justify conviction, the evidence must establish every essential element of the offense charged. Because the crime must be prosecuted where committed, one of the essential elements which the State must establish is the location of the crime. *State v. Losolla,* 84 N.M. 151, 500 P.2d 436 (Ct.App.1972).

The defendant confessed to the murder of Hector Carabajal and Francisco Padilla in Padilla's car. After shooting both victims, the defendant removed the two bodies from Padilla's vehicle and drove to Texas. Although the defendant did not say he killed the two men in New Mexico, the jury could infer the murders took place in this State because he confessed throwing the bodies out of the car immediately. The defendant does not challenge the fact that the bodies were found in New Mexico. The fact the bodies were found a mere three-tenths of a mile from the Texas border was for the jury to consider. The following parts of the December 6th statement went to the jury:

> D–Sheriff DiMatteo      R–Ramirez

"D. You want to go ahead and relate to us what happened in regard to the death of the two individuals *who died on the 24th of April 1974, in Anthony, New Mexico.* The two individuals being Francisco Padilla and Hector Carabajal.

Do you understand your rights? [Emphasis added].

"R. Yes sir.

"D. You are ready to tell us the truth, what took place that day without an attorney present?

"R. Yes sir.

". . .

"D. Were you stopped at a deserted road?

"R. At a ranch, there was the ranch and a little to the front was the road, the same road.

"D. You were stopped there?

"R. Yes, we were stopped there talking.

"D. What were you trying to do?

"R. I was trying to tell them that if they didn't give me the truck they were going to kill me and if not, I would have to make arrangements with them. Kill them so they would not kill me.

"D. When you told them this, what happened?

"R. They didn't believe me so, I killed them.

"D. You got out the gun?

"R. Yes, I got out the gun.

"D. You had a gun?

"R. Yes, that gun.

"D. What kind of a gun?

"R. A 38 cylinder.

"D. How many shots?

"R. 5 shots.

"D. Who was the one that you gave the first shot, who did you kill first?

"R. Hector.

"D. How many times, do you remember?

"R. No.

". . .

"D. Where did you hit them?

"R. In the head.

"D. After you killed them, what did you do?

"R. I went back.

"D. After you killed them and they fell there inside the car, because you all were in the car, is this correct?

"R. Yes, we were in the car.

"D. Okay after you fired the shots at them, what happened?

"R. *I got them down from the car. I got both of them down* and then I took the car and I came. [Emphasis added].

"D. You got Pancho's car?

"R. Yes, and I went to the bar in Anthony. The Gabachos didn't come into the dirt road, they didn't drive the truck into the dirt road, they waited for me there by a bridge that is there. . . ."

█ Our duty is to determine whether there is substantial evidence in the record to support the finding of the jury that the defendant murdered the victims in New Mexico. *State v. Lucero*, 88 N.M. 441, 541 P.2d 430 (1975). We follow the rule stated in *State v. Parker*, 80 N.M. 551, 458 P. 2d 803 (Ct.App.1969). The appellate court:

"[i]n determining whether [substantial] evidence supports a criminal charge, or an essential element thereof, [must] view the evidence in the light most favorable to the State, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the [jury's] verdict of conviction. . . ."

█ The defendant cites *State v. Lopez*, 84 N.M. 805, 508 P.2d 1292 (1973). *Lopez* is inapposite because the issue presented was whether the trial court had venue.

"Although the terms 'jurisdiction' and 'venue' are often used interchangeably in criminal cases, they are distinguishable. Jurisdiction refers to the judicial power to hear and determine a criminal prosecution, whereas venue relates to and defines the particular county or territorial area within a state or district in which the prosecution is to be brought or tried." 21 Am.Jr. Criminal Law § 376 (1965).

It is axiomatic that venue does not affect the power of the court and can be waived. A jurisdictional defect, however, can never be waived because it goes to the very power of the court to entertain the action. A jurisdictional defect can be raised at any stage of the proceedings, even sua sponte by the appellate court. *State v. Losolla*, supra.

█ We do not consider this point jurisdictional because we see no reason to depart from the rule that circumstantial evidence may be used to establish an element of a crime. See *United States v. Martine*, 442 F.2d 1022 (10th Cir. 1971). The location of the crime, as one element, may be proved by circumstantial evidence. The defendant's confession, together with circumstantial evidence, supports our conclusion that there is substantial evidence in the record for the jury's verdict that the crime was committed where the bodies were found. Cf. *State v. Mosier*, 83 N.M 213, 490 P.2d 471 (Ct.App.1971). For authority on circumstantial evidence on the question of venue, see *State v. Nelson*, 65 N.M. 403, 338 P.2d 301 (1959), cert. denied, 361 U.S. 877, 80 S.Ct. 142, 4 L.Ed. 2d 115 (1959).

█ The defendant suggests that to allow the inference of territorial jurisdiction from the location of the bodies would violate due process under the federal and state constitutions.

The New Mexico Uniform Jury Instructions for criminal cases require a charge that in order to find the defendant guilty, the State must prove to the satisfaction of the jurors, beyond a reasonable doubt, that the crime happened in New Mexico. N. M.U.J.I.Crim. 2.00, 2.10 [N.M.S.A.1953 (2d Repl. Vol. 6, Supp.1975)]. Although the jury instructions for criminal cases were not in effect at the time of this case, the jury was so charged.

The location of the bodies in New Mexico is undisputed and is not the only bit of evidence. The jury was at liberty to infer the situs of the crimes after hearing cross-examination of all witnesses and weighing all evidence. We do not believe due process is violated by allowing the jury to infer the location of the crimes from the evidence presented, especially when the jury is properly charged to find beyond a reasonable doubt that the murders occurred in New Mexico. See *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).

■ The defendant asserts a jurisdictional defect such as in *State v. Losolla,* supra. *Losolla* can be distinguished from the case at bar. In *Losolla* the State produced no evidence whatsoever to show the defendant was in New Mexico at the time of the alleged offense. In this case there is evidence that the defendant shuttled between Texas and New Mexico. We take judicial notice that Anthony lies part in Texas and part in New Mexico. The crime was committed in one of the two states. If a choice exists between two conflicting chains of inference, that choice is for the trier of fact.

*Exclusion of the State Police Laboratory Reports*

Defendant asserts as error exclusion of two letter-reports from the New Mexico State Police Crime Laboratory, summarizing tests on blood and dirt samples taken from the tires and wheel rims of decedent Padilla's car. Padilla's car was found in Texas but the bodies were found in New Mexico. Massive blood stains and spent bullets found inside the car indicate the murders were committed therein. The results of the tests show the dirt samples taken from the location where the bodies were found did not match the dirt samples taken from the victim's car.

The modern view is that all relevant evidence is admissible unless excluded by some specific rule. N.M.R.Evid. 402, § 20–4–402, N.M.S.A.1953 (Repl. Vol. 4,

Supp.1975) ; F.R.Evid. 402, 28 U.S.C. Rule 402 (Supp. V, 1975). The letter-reports seem relevant to the issue of the location of the crime, but the district attorney objected to the reports as hearsay evidence. The question is whether the reports can be introduced under one of the exceptions to the hearsay rule.

The defendant argues the tests are admissible under the New Mexico Rules of Evidence, Rule 803(8)(C) [Section 20–4–803(8)(C), N.M.S.A.1953 (Repl.Vol. 4, Supp.1975)]. The rule is:

"Public Records and Reports. Records, reports, statements, or data compilations in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law, or (C) in civil cases and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, *unless* the sources of information or *other circumstances indicate lack of trustworthiness.*" [Emphasis added].

The trial court agreed to allow the introduction of the reports if the defendant would lay a foundation. The defendant refused. The following exchange took place:

"BY MR. LOWENHAUPT: [defense counsel] At this time, it is my thought that I do want to tender Defendant's Exhibit's [sic] Number Two and Three in their altered form eliminating any reference to a weapon. And the Court has refused that tender because Mr. Williams will not stipulate to their introduction—

"BY THE COURT: A foundation must be laid.

"BY MR. LOWENHAUPT:—Without a foundation. And my thought at this time is that although I do tender these items that if Mr. Williams is not going to call any more experts, then I probably want [sic] call any more experts either and I probably will not end

up laying a foundation for the admission of these items. In other words, since Mr. Williams—Wengs [crime laboratory technician] is down here already, I don't want to have to bring him back. But if any more experts are coming, I will want Mr. Wengs. This is my position at this time.

"BY THE COURT: But, you do not want to preserve his testimony?

"BY MR. LOWENHAUPT: No, Sir."

The issue is whether the reports were properly admissible without foundation. This requires interpretation of Rule 803(8)(C), supra, a question of first impression in New Mexico.

Few cases have been found discussing the public records exception to the hearsay rule in *Rule 803(8)(C)*, but cases are legion discussing the business records exception now embodied in *Rule 803(6)*. N.M. R.Evid. 803(6) [Section 20–4–803(6), N. M.S.A.1953 (Repl. Vol. 4, Supp.1975); F. R.Evid. 803(6), 28 U.S.C. Rule 803(6) (Supp. V, 1975)]. See also the Business Records Act, 28 U.S.C. § 1732 (1970). Public records were recognized as an exception to hearsay at common law and have been the subject of many statutes. See 28 U.S.C. § 1733 (1970). It should be noted that in most instances public statements and documents prepared by a public official in the performance of official duties are admissible under various exceptions to the hearsay rule, usually under the "business records" exception. *Blanchard v. United States,* 360 F.2d 318 (5th Cir. 1966); *La Porte v. United States,* 300 F.2d 878 (9th Cir. 1962). We will discuss the business record and public record exceptions together to show the overlap in coverage and the development of the modern rules.

The *Rule 803(6)* exception to hearsay for activities conducted in regular course originated in the regular entries and shopbook doctrines which were subject to rigorous requirements; among others, the

shopkeeper had to authenticate the records by oath. 5 Wigmore, Evidence §§ 1517–1561 (Chadbourn rev. 1974). Subsequently, the common law rule was expanded but many requirements remained; for example, under the traditional view the maker of the record (entrant) or custodian had to be unavailable to testify as a witness. Early cases required the entrant or custodian to be dead, insane, ill or otherwise unavailable. Under the New Mexico territorial statute providing for the introduction of books of account in civil cases, the testimony of the bookkeeper was essential for a foundation. Failure to produce the bookkeeper or account for his absence was reversible error. *Price v. Garland,* 3 N.M. (Gild.) 505, 6 P. 472 (1885). Section 20–2–11, N.M.S.A.1953 (Repl. Vol. 4, 1970), repealed, Laws 1973, ch. 223, § 2.

In 1945 the New Mexico legislature relieved the burdensome common law requirements by enacting almost verbatim the model act for "Proof of Business Transactions." *Reinecke v. Mitchell,* 54 N.M. 268, 221 P.2d 563 (1950). Section 20–2–12, N. M.S.A.1953 (Repl. Vol. 4, 1970), repealed, Laws 1973, ch. 223, § 2.

The trial court is still the best judge whether evidence tendered as a public record or compiled in regular course meets the standard of trustworthiness and reliability which will entitle the record to stand as evidence of issuable facts. See *Moran v. Pittsburgh-Des Moines Steel Co.,* 86 F. Supp. 255, 280 (W.D.Pa.1949), rev'd on other grounds, 183 F.2d 467 (3rd Cir. 1950).

"The general rule is that [business records] are not admissible as evidence under the Official Records Act (28 U.S. C. § 1732) *unless a proper foundation is laid,* establishing them as records made in the regular course of business." *Gilstrap v. United States,* 380 F.2d 6 (5th Cir. 1968), cert. denied, 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968). [Emphasis added].

In regard to government reports, it has been stated: "That a report has been pre-

pared by a government official or agency does not always require its admissibility." *LeRoy v. Sabena Belgian World Airlines,* 344 F.2d 266 (2d Cir. 1965), cert. denied, 382 U.S. 878, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965) (Construing the Business Records Act, 28 U.S.C. § 1732 (1970)).

Recently, similar principles have been incorporated and expanded in the federal rules and similar state codes. The rationale of the doctrine remains: these records should be admissible despite the hearsay rule *where the sources of information and the method of preparation indicate trustworthiness.* As for the public records exception to hearsay, the assumption is that a public official will perform his duty properly. Advisory Committee Notes, Federal Rules of Evidence 803(8), 28 U.S.C. Rule 803(8) (Supp. V, 1975).

When Congress considered the Federal Rules of Evidence, it can be presumed to have been aware of the interpretation of the business records exception current in the courts when it approved *Rule 803(6).* *United States v. Smith,* 172 U.S.App.D.C. 297, 521 F.2d 957 (1975). *Rule 803(6)* and *Rule 803(8)(C)* of the federal and New Mexico rules of evidence have a requirement of "trustworthiness" as a prerequisite to the admission of business records or public records and reports. In addition, *Rule 803(8)* " . . . appears to overlap rather than to diminish 803(6)." *United States v. Smith,* supra. The conclusion is that the discretion embodied in the concept of trustworthiness which the courts have read into 28 U.S.C. § 1732 and by implication into *803(6)* is the same requirement of trustworthiness called for in *803(8)(C).* This conclusion is supported by the Advisory Committee's Notes to the Federal Rules of Evidence:

"Hence the rule [803(8)(C)] as in Exception [803(6)], assumes admissibility in the first instance but with *ample provision for escape* if sufficient negative factors are present." [Emphasis added]. Advisory Committee's Note,

Federal Rules of Evidence 803(8)(C), supra.

Hence, the determination of trustworthiness is within the discretion which is traditionally allowed the trial court in the admission of evidence if surrounding factors indicate sufficient reliability.

But *Rules 803(6)* and *803(8)* are not completely coextensive. *Rule 803(6),* has a clearly stated foundation requirement that the document be shown "by the testimony of the custodian or other qualified witness . . . ." *Rule 803(8)* does not have such requirement. As stated by Judge Weinstein:

" . . . Rule 803(8) does for the public records exception what the model statutes did for the shopbook and regular entries exception. . . . That is, the Rule considerably expands the type of record that may be admitted. . . . Since the assurances of accuracy are usually even greater for public records than for regular entries, Rule 803(8) omits foundation requirements . . . thereby making it more advantageous to qualify under this rule than under Rule 803(6). Of course, *there may be instances when questions will be raised about the manner in which the record was made or kept . . .* which *must be satisfactorily explained by a custodian or other qualified witness, if the judge is not to exclude it for lack of trustworthiness* pursuant to the last clause of Rule 803(6)." 4 Weinstein & Berger, Evidence, § 803(8)[01]. (1975 ed.) [Emphasis added, citation omitted].

If we were to stop at this point, we might be compelled to find an abuse of discretion and reversible error. There is, however, more.

It is true that modern rules have eliminated the requirement that the entrant or custodian must be unavailable. N.M.R. Evid. 803, supra. The modern rules have relaxed the common law requirement of calling or accounting for all participants in

the making of the record. For regularly conducted activities the rule has been relaxed so that foundational testimony may be provided by *any* qualified witness. Advisory Committee Notes, Federal Rules of Evidence 803(6), supra. Foundation requirements have not been eliminated altogether. This means that the custodian of the records "or other qualified witness," not necessarily the original entrant, must appear in court, identify the records, and testify as to the mode of their preparation and their safekeeping.

Foundation requirements for the *Rule 803(8)(C)* exception have been relaxed to the point that in some cases they are omitted. Weinstein & Berger, supra. But there is a requirement of *trustworthiness*. This means that it continues to be for the court to decide whether the record or report to be introduced is sufficiently trustworthy in and of itself, regardless of any testimony which the entrant might give. Unless they fall within the narrow exception for self-authenticating documents, the records must be authenticated. The reports in this case cannot be self-authenticating for two reasons: (1) they were not under seal, (2) they were not offered in their original form. The defendant sought to introduce altered reports which eliminated references to a revolver which was suppressed as the fruit of an unlawful search.

Traditional rules of evidence require a party seeking the introduction of documents to establish that the documents are in fact what they purport to be. Because the reports in this case were stamped with the letterhead of the State of New Mexico does not, without more, indicate that they are records of a regularly conducted activity or factual findings resulting from an investigation made pursuant to authority granted by law. This is particularly true when the defendant seeks to introduce an altered version of the original report. A contrary ruling would automatically admit into evidence all "public" documents or reports in derogation of the trustworthiness requirement and the court's discretion.

Because counsel declined the trial court's invitation to lay a foundation, the trial court was within its discretion not to allow introduction of the reports. We believe this analysis is sound regardless of the theory of admissibility advanced; hence, we pretermit discussion of appellant's other point. The admission or exclusion of evidence in the trial of a criminal case is a matter within the sound discretion of the trial court, and will not be disturbed on appeal unless there has been a clear abuse. *State v. Marquez*, 87 N.M. 57, 529 P.2d 283 (Ct.App.1974).

*Error in the Refusal of Requested Instructions on Manslaughter*

The trial court refused the defendant's requested instructions on voluntary manslaughter which the defendant asserts should have been given because there existed an issue of self-defense. Defendant argues that there was a showing of fear and provocation arising from the decedents' refusal to return the truck and marijuana to the defendant. We disagree.

The defendant cites *State v. Ulibarri*, 67 N.M. 336, 355 P.2d 275 (1960). We agree with the rule of law stated in *Ulibarri*:

"... where there is any evidence tending to show such a state of facts as may bring the homicide within the grade of manslaughter, defendant is entitled to an instruction on the law of manslaughter, and it is fatal error to refuse it. ..."

Although we agree with this rule, we do not agree that the facts in this case justified the requested instructions.

The evidence shows that the truck laden with marijuana which the defendant was driving to Las Cruces broke down in Anthony on Saturday and disappeared. The defendant returned to Portales to inform his employer that, as alleged by the decedents, the truck had been confiscated by

the police. After a few days, defendant and his employer discovered that no report of police confiscation had appeared in the newpapers. The confession shows that Ramirez was ordered by the man who hired him to transport the marijuana to recover the truck. Ramirez, his employer and two other persons, returned to Anthony on the following Wednesday to get the truck from the victims.

There was no sudden fear or sudden passion by the time the defendant approached the victims. Ramirez already knew what he had to do; he had been instructed to get the truck or kill those who had it. Otherwise, Ramirez would be killed by his employer. The defendant then went with the victims and parked in Padilla's car, where he informed them they would be killed if the truck was not returned. He informed them his life was threatened by his employer. When the victims did not believe him, Ramirez shot and killed them both.

Self-defense requires the preservation of oneself from attack. There is evidence the defendant was threatened by his employer, not by the victims. Voluntary manslaughter requires a killing upon a "sudden quarrel or in the heat of passion." Section 40A–2–3, N.M.S.A.1953 (2d Repl. Vol. 6, 1972). The circumstances of the case at bar present no issue of sudden quarrel, heat of passion, or sufficient provocation. *State v. Smith*, (Ct.App.), No. 2333, decided May 1, 1976; *State v. Gutierrez*, 88 N.M. 448, 541 P.2d 628 (Ct.App. 1975).

We believe that the trial court did not err in refusing to give instructions on manslaughter. It is error to submit the issue of manslaughter where no such issue is involved. *State v. Trujillo*, 27 N.M. 594, 203 P. 846 (1921). See also, *State v. Smith*, supra; *State v. Nevares*, 36 N.M. 41, 7 P.2d 933 (1932); *State v. Gutierrez*, supra.

Judgment and sentence of the trial court are affirmed.

IT IS SO ORDERED.

HERNANDEZ, J., specially concurring.

SUTIN, J., dissenting.

HERNANDEZ, Judge (specially concurring).

I concur in the opinion of Judge Lopez, with the exception that I concur only in the result on defendant's point two, exclusion of the state police laboratory reports. The interpretation in the opinion of Rule of Evidence 803(8)(C) [§ 20–4–803(8)(C), N.M.S.A.1953 (Repl. Vol. 4, Supp.1975)] is not necessary to the holding. Defendant's voluntary waiver of his opportunity to lay a foundation for the admission of the state police laboratory reports is a sufficient ground for holding that there was no error in the exclusion of the reports.

SUTIN, Judge (dissenting).

I dissent.

A. *Defendant's confession was not admissible in evidence.*

On December 2, 1974, defendant, an uneducated, 20-year-old Mexican-born laborer, was arrested for murder. On December 4, 1974, he was arraigned before a magistrate in Las Cruces. At that time, the sheriff and magistrate assisted defendant, an indigent, in the preparation and signing of the necessary papers for appointment of counsel to represent him. The district court entered such an order on the same day.

The defendant wanted to talk to the sheriff and he was questioned by the sheriff and made answers, all taken down by means of a tape recorder. This first statement was exculpatory.

On December 6, 1974, the district court appointed Edward E. Triviz, an attorney of Las Cruces, to represent the defendant in this case. On the morning of December 6th, defendant asked the sheriff if he had time later that afternoon to talk. At 3:30 p. m. the sheriff went to the district court clerk and was informed that Mr. Bruce Lowenhaupt had been appointed as defendant's attorney. We assume that he was

not aware of the fact that Mr. Triviz had been appointed. The sheriff met with Stephen Bridgforth, an assistant district attorney, who checked at the clerk's office and also told the sheriff that defendant had Lowenhaupt as an attorney. No such appointment appears of record. The sheriff called Mr. Lowenhaupt's office about 4:40 p. m. and learned that Mr. Lowenhaupt was not in his office. About 5:00 p. m. the sheriff called Mr. Bridgforth and told him the attorney could not be located. About ten minutes later, Mr. Bridgforth called the sheriff and said he could not find Mr. Lowenhaupt and asked if defendant was still pressing to make another statement. The sheriff said yes. The assistant district attorney said "Go through with the same procedures that you used yesterday, have him sign another waiver, and then, make sure that the girl takes the statement in shorthand and make sure that you record it." The sheriff took the same precautions. The confession was inculpatory. The sheriff did not tell defendant that neither Lowenhaupt nor Triviz had been appointed his attorney. In fact, defendant did not know whether an attorney had been appointed, nor who the attorney was. The assistant district attorney told the sheriff that it is proper to interview a defendant without clearing with or first contacting his court appointed counsel.

Defendant moved to suppress the statements made to the sheriff. The trial court denied the motion because defendant waived his right to have counsel present during interrogation and waived his right to confer with counsel prior to being interrogated.

Section 41–22A–12(D), N.M.S.A.1953 (2d Repl.Vol. 6, 1975 Supp.) of the Public Defender Act reads:

Any person entitled to representation by the district public defender may intelligently waive his right to representation. The waiver may be for all or any part of the proceedings. *The waiver must be in writing and countersigned by a dis-trict public defender.* [Emphasis added].

This language is mandatory and demands compliance. It "clearly relates to waiver of sixth amendment rights to counsel." *State v. Rascon,* 89 N.M. 254, 550 P.2d 266, 270 (1976), reversing *State v. Rascon,* 88 N.M. 395, 540 P.2d 875 (Ct.App.1975) (Sutin, J., dissenting).

In the instant case, the appointed public defender was not notified of the interrogation, was not present and did not countersign the waiver. The defendant was not warned of his right to have the interrogation approved by his attorney. There was no valid waiver. "While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1467 (1938), quoted in *State v. Garcia,* 47 N.M. 319, 327, 142 P.2d 552 (1943). The waiver was before the district court and opposing counsel. Prior to accepting the waiver, each had a duty to search the statutes to determine whether it was proper, valid and effective.

"A man is not to be deprived of his liberty and reputation because of the inadvertence of a trial judge or the carelessness of his counsel in failing to call the attention of the trial court to palpable error which offends against the fundamentals of a fair and impartial trial." *Commonwealth v. O'Brien,* 312 Pa. 543, 168 A. 244, 245 (1933); *Commonwealth v. Wadley,* 169 Pa.Super. 490, 83 A.2d 417, 419 (1951).

Defendant had the right to the assistance of counsel during the interrogation. This was a critical stage of a criminal proceeding. "The Sixth Amendment [to the United States Constitution] guarantee of the assistance of counsel requires that counsel be present at all 'critical stages' of a criminal proceeding." *State v. Myers,* 88 N.M. 16, 25, 536 P.2d 280, 289 (Ct.App. 1975) (Sutin, J., dissenting); *State v. San-*

*chez,* 85 N.M. 368, 512 P.2d 696 (Ct.App. 1973). The confession taken by the sheriff, in the absence of a public defender, violated the defendant's Sixth Amendment rights. The confession was inadmissible in evidence.

My brethren, in affirming the trial court conviction, have directed the State to pole vault to affirmance without a pole.

The Sixth Amendment to the United States Constitution provides that "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." "This is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty." *Johnson v. Zerbst,* supra [304 U.S. at 462, 58 S.Ct. at 1022, 82 L.Ed. at 1465].

Section 41–22A–10(B), N.M.S.A.1953 (2d Repl.Vol. 6, 1975 Supp.) provides that:

The representation shall begin not later than the time of the initial appearance of the person before any court and shall continue throughout all stages of the proceedings against him . . ..

Under this provision, the attorney-client relationship commenced for the defense in response to the Sixth Amendment, when defendant initially appeared before the magistrate and an order was entered directing the appointment of counsel. *Rascon,* supra.

The majority opinion blindfolds itself to this constitutional question because it was not raised in the court below, nor briefed and supported by authority on appeal.

In my opinion, the motion to suppress the statements made by defendant to the sheriff was sufficient to call this matter to the attention of the court even though the specific question was imperfectly presented. The motion declared that the statements "were obtained after Defendant had requested the assistance of counsel, which assistance of counsel the Defendant did not intelligently, knowingly and voluntarily waive."

We must not say in a capital case that, because of the inadvertence of the trial court, the district attorney, and defendant's attorney, all of whom overlooked a statute which required the waiver to be "countersigned by a district public defender", the matter was not raised in the court below. Although it appears that this issue was not specifically presented, defendant's brief presented by an appellate public defender, did cite authority that in addition to the Miranda warnings, "the right to have counsel present during interrogation must be *effectively* waived." [Emphasis added]. *United States v. Oliver,* 421 F.2d 1034, 1038 (10th Cir. 1970).

The majority opinion condones the conduct of the assistant district attorney who directed the sheriff to take the confession of defendant on December 6, 1974 without the presence of appointed counsel. "It is not the primary duty of the district attorney to convict a defendant. It is his primary duty to see that the defendant has a fair trial, that justice is done." *Chacon v. State,* 88 N.M. 198, 201, 539 P.2d 218, 221 (Ct.App.1975) (Sutin, J., dissenting); *State v. Quintana,* 86 N.M. 666, 526 P.2d 808 (Ct.App.1974) (Sutin, J., concurring in part and dissenting in part); *State v. Chambers,* 86 N.M. 383, 524 P.2d 999 (Ct. App.1974); *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). This is especially true when an uneducated, Spanish-speaking young man. is charged with first degree murder.

In my opinion, fundamental error also occurred. "Fundamental error is error which goes to the foundation of the case, *or which takes from a defendant a right essential to his defense.* Where it appears and justice requires this court will consider it whether or not exceptions are taken in the court below or whether or not it be assigned as error on appeal." [Emphasis added]. *State v. Sena,* 54 N.M. 213, 218, 219 P.2d 287, 289 (1950). "Error that is fundamental must be such error [that takes] . . . from the defendant a

right which was essential to his defense and which no court could or ought to permit him to waive. . . . Also, there may be such a case . . . . which would so shock the conscience of the court as to call for a reversal." *State v. Garcia,* 46 N.M. 302, 309, 128 P.2d 459, 462 (1942). "It will never be exercised in and of some strictly legal, technical or unsubstantial claim." *State v. Lott,* 73 N.M. 280, 286, 387 P.2d 855, 859 (1963). Defendant was denied "a right essential to his defense" when his confession was taken absent his court-appointed attorney.

We have a duty, when life or liberty is at stake, to thoroughly search the record. We must give the defendant the benefit of any obvious and substantial error committed which led to his conviction, even though it was not raised in the court below. *Anderson v. State,* 8 Okl.Cr. 90, 126 P. 840 (1912). The best statement on errors affecting fundamental rights is stated in 5 Am.Jur.2d, Appeal and Error § 549 (1962). It reads:

A reviewing court may consider questions raised for the first time on appeal if necessary to serve the ends of substantial justice or prevent the denial of fundamental rights. *This rule is peculiarly applicable in criminal cases and especially in capital cases.* So, in a case involving deprivation of life or liberty, the court will notice errors appearing upon the record which deprived the accused of substantial means of enjoying a fair and impartial trial, although no exceptions were preserved, *or the question is imperfectly presented.* [Emphasis added].

A review of authorities shows that courts have noticed matters raised for the first time on appeal and they have reversed where error was not as manifest as it is in this case. *State v. Sharpe,* 239 S.C. 258, 122 S.E.2d 622 (1961); *State v. Cullum,* 23 Conn.Sup. 20, 1 Conn.Cir. 120, 176 A.2d 583 (1961); *Anderson v. Commonwealth,* 302 Ky. 275, 194 S.W.2d 530 (1946); *Edwards v. Commonwealth,* 298 Ky. 366, 182 S.W.2d 948 (1944); *State v. Morris,* 41 Wyo. 128, 283 P. 406 (1929); *State v. Hester,* 137 S.C. 145, 134 S.E. 885 (1926); *Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936).

In *Edwards,* supra, the assistant Commonwealth attorney made an improper oral argument. In reversing the conviction, the Court said:

It is true that no objection at the time was made to the statement; but, where the defendant's life is at stake, technical rules of procedure must give way to the more lofty aim that justice may be done. [182 S.W.2d at 952].

In *Cullum,* supra, where defendant failed to properly restate his reasons in a motion to set aside the verdict, the Court said:

In the trial of a person charged with the commission of a crime, it is more important to enforce the time-tested safeguards which the law has erected for the protection of the innocent than to distort and subvert them in order to block the escape from punishment of even an apparently guilty person. Such has ever been the policy of this state. [176 A.2d at 586].

Similar quotations, vibrant in tone and resolute in expression, are manifold, even in cases where error did not affect the substantial rights of the accused. See *State v. Taylor,* 213 S.C. 330, 49 S.E.2d 289 (1948), 16 A.L.R.2d 1317 (1951); *Mack v. State,* 203 Ind. 355, 180 N.E. 279 (1932), 83 A.L.R. 1349 (1933); *State v. Martin,* 243 Iowa 1323, 55 N.W.2d 258 (1952), 34 A.L.R.2d 904 (1954); *Anderson v. State,* supra.

Without the confession of December 6, 1974, there was no evidence upon which a conviction could be had. The admission of that confession affected the substantial rights of the defendant. It was plain error of a fundamental nature. I find it to be a basic constitutional question which is reviewable as plain error, as well as fundamental error.

Rule 103(d) of New Mexico Rules of Evidence [§ 20–4–103(d), N.M.S.A.1953 (Repl.Vol. 4, 1975 Supp.)] reads:

> (d) PLAIN ERROR. Nothing in this rule precludes taking notice of plain errors affecting substantial rights *although they were not brought to the attention of the judge.* [Emphasis added].

Rule 103(d) is part of a rule concerned with evidentiary rulings. *State v. Sanchez*, 86 N.M. 713, 526 P.2d 1306 (Ct.App. 1974). This rule applies to criminal proceedings. Section 20–4–1101.

"Plain error" means error both obvious and substantial. *Sykes v. United States*, 373 F.2d 607 (5th Cir. 1966). It does not require legal acumen to state unequivocally that the admission in evidence of the confession of December 6, 1974, based upon an invalid waiver of the right to counsel, was plain error, obvious and substantial. Plain error apart from evidentiary proceedings supports a reversal.

*Sibbach v. Wilson & Co.*, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941) held that a commitment for contempt of court for refusal to comply with an order of a Federal District Court for a physical examination was a plain error of such a fundamental nature that the Supreme Court should notice it, notwithstanding a failure to assign it as error either in the Supreme Court or the Circuit Court of Appeals. See also, *United States v. Atkinson*, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936); *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910); 24A C.J.S. Criminal Law § 1798, p. 419 (1962).

Furthermore, the original confession taken in Spanish was not introduced in evidence. An unsigned, translated copy was presented.

Rule 1002 of the Rules of Evidence [§ 20–4–1002, N.M.S.A. 1953 (Repl.Vol. 4, 1975 Supp.)] provides:

> To prove the content of a writing . . . the original writing . . . is required, except as otherwise provided in these rules or by statute.

Rule 1004 sets forth the exceptions, none of which are applicable. Under the best evidence rule, the unsigned, translated confession of the defendant was not admissible in evidence.

Furthermore, the trial court erred in excluding State Police laboratory reports. No argument is necessary.

The trial court had territorial jurisdiction. Section 40A–1–15, N.M.S.A.1953 (2d Repl. Vol. 6) provides:

> In the event that death occurs in this state as a result of the criminal action in another state, trial may be had in the county in which the death occurred.

There was a miscarriage of justice to permit this conviction to stand. It shocks my conscience. The defendant did not have a fair trial. I repeat what I said in my dissenting opinion in *State v. Myers*, 88 N.M. 16, 26, 536 P.2d 280, 290 (Ct.App. 1975):

> A criminal trial is an adversary procedure in which the State, seeking the conviction of an accused, and the accused, fighting for his liberty, engage in combat. Each side should fight with zeal, yet not without respect for the rules that maintain the fairness of the adversary process. The accused must be given the benefit of all procedural safeguards provided by the Constitution, by statutes, and by case law. This is the essence of a fair trial, one in which evenhanded justice is dispensed.
>
> A sporting contest is analogous to a lawsuit, in that it is an acceptable form of combat in our society, acceptable because the "rules of the game" maintain fairness between the adversaries. In boxing, the rules do not require that one adversary shall fight with one arm strapped to his back. In tennis, the rules do not require a right handed adversary to use the racquet with his left hand.
>
> Similarly, in a criminal trial, defendant, a young, uneducated, Spanish-speaking man, should not be burdened, in a fight for life or liberty, with the inadvertence and

error of a trial court, the whims of a district attorney, the absence of an appointed attorney at a critical stage of the proceedings, or the failure of an appointed attorney to properly present a fundamental matter to the court. It is a fundamental principle of justice, independent of the federal or state constitutions, that the defendant have a fair trial.